Opinion
ARONSON, J.
In this original proceeding, we consider several issues relating to a confidential attorney-client communication, including (1) whether the client waived the attorney-client privilege by disclosing the communication to third parties, and (2) whether the trial court erred in disqualifying the law firm that represented one of those third parties because its attorneys failed to notify the client or the client’s attorney that counsel had obtained a copy of the communication, reviewed and analyzed the communication, and used it in the lawsuit.
The trial court found that plaintiff and real party in interest Richard P. Hausman, Sr. (Dick),[1] did not waive the attorney-client privilege by forwarding a confidential e-mail he received from his personal attorney to his sister-in-law because Dick inadvertently and unknowingly forwarded the e-mail from his smartphone, and therefore lacked the necessary intent to waive the privilege. The trial court also impliedly found that Dick’s sister-in-law did not waive the privilege when she forwarded the e-mail to her husband, who then shared it with four other individuals, because neither Dick’s sister-in-law nor *1092 his brother-in-law could waive Dick’s attorney-client privilege, and Dick did not consent to these additional disclosures because he did not know about either his initial disclosure or these additional disclosures until a year after they occurred.
In a separate order, the trial court disqualified Gibson, Dunn & Crutcher LLP (Gibson Dunn) from representing defendants and petitioners McDermott Will & Emery LLP and Jonathan C. Lurie (collectively, Defendants) in the underlying lawsuits because Gibson Dunn failed to recognize the potentially privileged nature of the e-mail after receiving a copy from Lurie, and then analyzed and used the e-mail despite Dick’s objection that the e-mail was an inadvertently disclosed privileged document. The court explained Gibson Dunn had an ethical obligation to return the privileged material and refrain from using it under State Comp. Ins. Fund v. WPS, Inc. (1999) 70 Cal.App.4th 644 [82 Cal.Rptr.2d 799] (State Fund). The court found Gibson Dunn’s disqualification was necessary because there was a genuine likelihood Gibson Dunn’s improper use of the e-mail would affect the outcome of the lawsuit, the integrity of the judicial proceedings, and the public’s confidence in the proceedings.
Defendants petition this court for a writ of mandate directing the trial court to vacate both its order finding Dick did not waive the attorney-client privilege as it applied to the e-mail, and its order disqualifying Gibson Dunn from representing Defendants in the underlying lawsuits. We deny the petition in its entirety. As we explain below, substantial evidence supports the trial court’s orders and the court did not abuse its discretion in selecting disqualification as the appropriate remedy to address Gibson Dunn’s violation of its State Fund duties.
Contrary to Defendants’ contention, an attorney’s State Fund duties are not limited to inadvertently disclosed, privileged documents the attorney receives from opposing counsel, but also may apply to documents the attorney receives from the attorney’s client. Indeed, regardless of how the attorney obtained the documents, whenever a reasonably competent attorney would conclude the documents obviously or clearly appear to be privileged and it is reasonably apparent they were inadvertently disclosed, the State Fund rule requires the attorney to review the documents no more than necessary to determine whether they are privileged, notify the privilege holder the attorney has documents that appear to be privileged, and refrain from using the documents until the parties resolve or the court resolves any dispute about their privileged nature. The receiving attorney’s reasonable belief the privilege holder waived the privilege or an exception to the privilege applies does not vitiate the attorney’s State Fund duties. The trial court must determine whether the holder waived the privilege or an exception applies if the parties *1093 fail to reach an agreement. The receiving attorney assumes the risk of disqualification when that attorney elects to use the documents before the parties or the trial court has resolved the dispute over their privileged nature and the documents ultimately are found to be privileged.
I
Lacts and Procedural History
A. The Hausman Family, Defendants’ Legal Representation, and the Dispute Over M. Hausman, Inc.
Marilyn H. Hausman and her husband, Dick, had four children, Mary Jo, John, Teri, and Richard P. Hausman, Jr. (Rick). The primary source of the couple’s considerable wealth was Marilyn’s multimillion-dollar investment portfolio. In 2000, Marilyn formed a holding corporation, M. Hausman, Inc. (MHI), to manage her portfolio. Marilyn was MHI’s sole shareholder and director, and also served as its president. Dick served as the officer primarily responsible for managing MHI’s investments, and joined Marilyn as a director in 2002. A few years later, Rick and William J. Cox also became directors of MHI. According to Dick, the value of MHI’s portfolio grew to approximately $50 million under his management.
In approximately 2002, Marilyn and Dick hired Defendants to provide a variety of estate planning services for their family. Over the years, Lurie formed several trusts and subtrusts for Marilyn and Dick, and the assets of those trusts included the shares in MHI. Dick, Rick, and Cox were appointed as cotrustees for many of these trusts, and the trust beneficiaries included the four Hausman children and Marilyn’s mother. As part of their representation of the Hausman family, Defendants also represented MHI on corporate, employment, and other miscellaneous matters.
Marilyn died in June 2008, and Dick succeeded her as MHI’s president. Rick and Cox also became vice-presidents at that time. Over the next several years, MHI continued to operate under the direction of Dick, Rick, and Cox, and Defendants continued to represent the Hausman family and MHI.
In 2013, Dick agreed to Rick’s request to be named MHI’s president so Rick could gain experience in managing MHI, but Dick continued to perform many of the president’s essential functions. Soon after becoming president, Rick sought to dramatically increase his and Cox’s salaries and other benefits, but Dick objected because he thought the substantial increases were not in MHI’s best interests or the best interest of the various trust beneficiaries. A *1094 struggle for control of MHI ensued and Dick, Rick, and Cox engaged in protracted discussions attempting to resolve their dispute. To advise him in these discussions and about his options under the various trusts, Dick hired his own attorney, Mark Blaskey.
On August 22, 2013, Dick, Rick, Cox, Blaskey, and Lurie met to discuss their disagreement. Immediately after that meeting, Dick, Blaskey, and lili Lindsay met to review their options. Lindsay was MHI’s employee and bookkeeper, but she also performed a variety of services for the various Hausman trusts and she was Dick’s longtime personal assistant and advisor. Lindsay worked for Dick for nearly 40 years, starting as his executive secretary when he was an executive with Allergan and then working personally for him after he left the company. In her capacity as Dick’s personal assistant, Lindsay regularly received and maintained correspondence on Dick’s behalf.
B. The Blaskey E-mail
On August 27, 2013, Blaskey sent Dick a lengthy e-mail summarizing the August 22 meeting and providing legal advice to Dick about his options for resolving the dispute. Blaskey entitled the e-mail “Summary of 8/22/13 meeting,” and copied Lindsay and his law partner, Alan Kessel. He copied Lindsay on the e-mail because she was responsible for maintaining Dick’s correspondence. Lindsay replied to all recipients the same day.
The following day Dick forwarded the Blaskey e-mail from his smartphone to “Mr. & Mrs. Gavin Shearer Herbert” at Ninetta Herbert’s e-mail address. Dick’s transmission did not include any additional text other than “Sent from my [smartphone].” That same day Ninetta forwarded the e-mail to Gavin at his e-mail address. Gavin was Marilyn’s brother and Dick’s brother-in-law. Gavin had not been involved in the various Hausman trusts or MHI for many years, but he was attempting to act as an intermediary or informal mediator to resolve the dispute between Dick, Rick, and Cox. Gavin engaged in several discussions with these individuals and also Lurie and Blaskey about the dispute.
Dick testified he did not intend to forward the Blaskey e-mail to Ninetta or Gavin, and did not know he had done so until the forwarded e-mail came to light approximately a year later. Dick was nearly 80 years old when he forwarded the e-mail and he explained multiple sclerosis had limited his physical dexterity. Gavin testified he did not recall receiving the Blaskey e-mail and he had not read it before it was shown to him at his deposition. He further testified that he had no idea why Dick would forward the e-mail to Ninetta, that doing so must have been a mistake, and that he never discussed *1095 the e-mail with Dick. Linally, Gavin testified he could not find a copy of the Blaskey e-mail when he was later asked to do so.
On September 4, 2013, Rick, Cox, and Greg Pellizzon, a financial advisor who was working with MHI, met with Gavin to discuss the ongoing dispute. According to Rick and Pellizzon, Gavin passed out copies of the Blaskey e-mail at this meeting and described it as minutes from the August 22 meeting. Gavin testified he had no recollection of this. Pellizzon testified he read the e-mail during the meeting, but did not keep a copy. During this meeting, Gavin also phoned Lurie to discuss the dispute and later that day forwarded the Blaskey e-mail to Lurie, although Gavin testified he did not recall this. Lurie testified he had some discussions with Gavin about the e-mail’s contents.
C. The Probate Action
Unable to resolve the dispute with Rick and Cox, Dick exercised a power he believed he held under the various trusts to reacquire all of MHI’s voting shares and seize control of the company. Lurie, however, asserted Dick could no longer reacquire MHI’s voting shares because Lurie had eliminated that option under the trusts’ terms shortly after Marilyn’s death. In October 2013, Dick filed a probate petition to confirm the actions he had taken to reacquire all MHI voting shares under the various Hausman family trusts (hereinafter, Probate Action).
In August 2014, Rick’s counsel in the Probate Action, lason Kirby, discovered a copy of the Blaskey e-mail among Rick’s documents as he prepared to respond to Dick’s demand to produce documents. Kirby pulled the e-mail and separately sent it to Dick’s counsel, Alan Kessel, with a letter explaining the e-mail appeared to be a privileged communication between Blaskey and Dick, but that Dick later waived the privilege by forwarding it to Ninetta and Gavin. The letter further explained that Rick obtained a copy of the e-mail when Gavin handed it out at the September 4, 2013 meeting involving Rick, Cox, Pellizzon, and Gavin. Kirby asked whether Dick’s counsel would claim the Blaskey e-mail still was privileged, and if so, for authority supporting that contention. Linally, Kirby assured Dick’s counsel he had not used or disclosed the contents of the e-mail. This letter was the first time Dick and his attorney learned the Blaskey e-mail had been forwarded to anyone other than the original recipients, and they did not yet know the e-mail also had been forwarded to Lurie.
Dick’s attorney, Kessel, responded that the Blaskey e-mail was a privileged attorney-client communication, and that Dick inadvertently disclosed the e-mail to Ninetta without intending to waive the privilege. Dick’s counsel *1096 explained that Dick rarely communicated with Ninetta and never talked to her about MHI affairs, and therefore he inadvertently forwarded the e-mail to Ninetta when he was trying to forward it to Lindsay. Based on State Fund and Rico v. Mitsubishi Motors Corp. (2007) 42 Cal.4th 807 [68 Cal.Rptr.3d 758, 171 P.3d 1092] (Rico), Dick’s counsel argued Kirby had an ethical obligation to return the inadvertently disclosed e-mail and destroy any copies. Dick’s counsel also asked Kirby to contact any other party he knew had received a copy of the Blaskey e-mail, including Ninetta, Gavin, and Pellizzon, and direct them to destroy their copies.
Kirby argued neither Rico nor State Fund applied because those cases did not involve a client waiving the privilege by disclosing a communication to third parties before any litigation arose. Nonetheless, Kirby agreed to destroy all copies of the Blaskey e-mail except one, to seal that copy, and only use the copy to resolve the parties’ dispute over whether Dick had waived the attorney-client privilege. Kirby also promised not to question anyone about the e-mail’s content until the parties resolved the waiver issue. Linally, Kirby asserted he had no obligation to ask third parties to return the Blaskey e-mail. All parties to the Probate Action honored this agreement for several months.
In late July 2015, Defendants produced several thousand pages of documents in the Probate Action based on Dick’s subpoena, and that production included a copy of the Blaskey e-mail that Gavin had forwarded to Lurie in September 2013. On August 13, 2015, the parties deposed Lurie in the Probate Action, and James Logelman of Gibson Dunn represented Lurie in the deposition. When Rick’s counsel questioned Lurie about the copy of the Blaskey e-mail that was included in Defendants’ document production, Dick’s attorney, Paul George, immediately objected that the e-mail was privileged and should not be used in the deposition. George also explained that Dick’s other attorney, Kessel, had asked Rick’s counsel to return all copies of the e-mail. This was the first time Dick and his counsel learned the Blaskey e-mail had been forwarded to Lurie.
Logelman claimed the Blaskey e-mail was not privileged and asserted neither he nor Defendants had ever been asked to return it. To remove any doubt, Dick’s counsel therefore requested that Logelman and his clients return all copies of the Blaskey e-mail because Dick inadvertently disclosed the privileged communication and all attorneys, including Lurie, had an ethical obligation to return or destroy inadvertently disclosed, privileged communications. Logelman refused to return or destroy the Blaskey e-mail, disputing it was privileged because Dick had disclosed it to third parties, including Ninetta, Gavin, and Lindsay. Logelman claimed an attorney’s ethical obligation to return inadvertently disclosed documents only applied to documents that were inadvertently produced during discovery. Dick’s counsel *1097 disagreed and the deposition continued. Lurie testified he reviewed the e-mail to refresh his recollection before the deposition, but he did not specifically testify about the e-mail’s content.
D. The Malpractice Actions
In May 2015, Plaintiffs filed two malpractice lawsuits against Defendants based on an alleged conflict in representing various members of the Hausman family, the Hausman family trusts, and MHI (collectively, Malpractice Actions). They brought one suit in their individual capacities and as trustees under certain Hausman family trusts. They brought the second lawsuit as a derivative action on MHI’s behalf. Dick had different counsel in the Malpractice Actions than he had in the Probate Action, and Logelman and Gibson Dunn represented Defendants in the Malpractice Actions.
On August 19, 2015, less than a week after Lurie’s deposition in the Probate Action, Gibson Dunn deposed Lindsay in the Malpractice Actions. Lindsay testified she worked for MHI, the Hausman family trusts, and Dick personally at the time she received the Blaskey e-mail.
Live days later, Gibson Dunn deposed Mary Jo in the Malpractice Actions. Logelman marked the Blaskey e-mail as an exhibit, sought to question Mary Jo about it, and read substantial portions of it into the record. Dick’s attorney, Suzanne Burke Spencer, explained she was not familiar with the document or how it was produced, but she asserted it was a privileged, attorney-client communication that appeared to have been produced inadvertently and she requested that Logelman return all copies. He disputed that the e-mail was privileged or that either Lurie or Gibson Dunn had an obligation to return the e-mail because Dick had disclosed it voluntarily to various third parties. Spencer maintained her privilege objection and demand for the return of the e-mail, but stated she would allow questions about the e-mail subject to a motion to strike once she learned the circumstances surrounding the communication and its disclosure. Logelman failed to inform Spencer that Dick’s attorney in the Probate Action had raised the same objections less than two weeks earlier at Lurie’s deposition in that separate lawsuit, nor did he inform her of the agreement the parties in that lawsuit reached about the e-mail. The following day, Gibson Dunn deposed Teri in the Malpractice Actions with Logelman and Spencer engaging in essentially the same exchange. On August 24, 2015, Logelman also quoted the Blaskey e-mail in interrogatory responses he served on Defendants’ behalf.
On September 4, 2015, Spencer wrote Logelman to explain the Blaskey e-mail remained a privileged communication between Dick and Blaskey. Spencer explained Lindsay’s inclusion on the e-mail did not destroy the *1098 privilege because she received it as Dick’s personal assistant, Dick’s inadvertent disclosure of the e-mail did not waive the privilege because he did not intend to disclose the e-mail to Ninetta or anyone else, and the disclosure of the e-mail by various third parties was done without Dick’s consent. Spencer further explained that Rick’s counsel in the Probate Action recognized the privileged nature of the Blaskey e-mail and brought it to the attention of Dick’s counsel even though Rick’s counsel also asserted the privilege had been waived. The attorneys in the Probate Action then agreed to preserve the e-mail’s privileged status while they attempted to resolve the dispute over whether Dick waived the privilege. Spencer also asserted Logelman knew Dick had claimed the e-mail was privileged and demanded its return because Logelman had attended Lurie’s deposition in the Probate Action, but Logelman nonetheless used the e-mail at Mary Jo’s and Teri’s depositions in the Malpractice Actions without informing her about those objections. Linally, based on Rico and State Fund, Spencer asserted Logelman had an ethical obligation to return or destroy all copies of the Blaskey e-mail and she demanded that he do so immediately.
After receiving Spencer’s letter, Logelman agreed that Gibson Dunn would temporarily stop using the Blaskey e-mail while the parties conducted discovery about the circumstances surrounding the e-mail and its disclosure. Nonetheless, Gibson Dunn produced a copy of the Blaskey e-mail as part of a larger document production in the Malpractice Actions on September 14, 2015.
During September and October 2015, Spencer conducted discovery about the Blaskey e-mail, but asserted additional discovery was still required on the waiver issue, including Lurie’s deposition. In mid-November 2015, Logelman wrote Spencer claiming Dick had been given sufficient time to explore the circumstances surrounding the e-mail and its disclosure, and none of the information uncovered established the Blaskey e-mail was a privileged communication. Logelman therefore announced Gibson Dunn would resume using the e-mail.
E. The Privilege and Disqualification Motions
In early December 2015, Dick filed a motion in the Malpractice Actions seeking (1) a judicial determination the Blaskey e-mail was a privileged attorney-client communication Dick inadvertently disclosed, and (2) an order requiring Gibson Dunn to return all copies of the e-mail and striking those portions of Mary Jo’s and Teri’s depositions where Logelman asked questions about the e-mail and read portions of it into the record. Defendants opposed the motion, arguing the Blaskey e-mail never was privileged based on Lindsay’s inclusion as an original recipient, and Dick nonetheless waived *1099 the attorney-client privilege by disclosing the e-mail to third parties. In support, Defendants filed a copy of the Blaskey e-mail under seal. In March 2016, the trial court granted Dick’s motion, and ordered Defendants to seal or return all copies of the Blaskey e-mail and seal the relevant portions of Mary Jo’s and Teri’s deposition transcripts. Dick served notice of entry of the order on March 15, 2016.[2]
Less than two weeks later, Dick filed a motion to disqualify Gibson Dunn from representing Defendants in the Malpractice Actions based on its use of the Blaskey e-mail and its refusal to return it. Gibson Dunn opposed the motion, arguing it was not readily apparent from the face of the e-mail that it was an inadvertently disclosed, privileged document. Gibson Dunn further argued its disqualification was not warranted because there was no evidence its review and initial failure to return the e-mail would substantially impact the litigation. On May 25, 2016, the trial court granted Dick’s motion and disqualified Gibson Dunn from representing Defendants in the Malpractice Actions. The court stayed its ruling for 30 days to allow Defendants to petition this court for relief.
On June 6, 2016, Defendants filed this writ petition seeking a writ of mandate compelling the trial court to vacate (1) its order deeming the Blaskey e-mail privileged, and (2) its order disqualifying Gibson Dunn as Defendants’ counsel in the Malpractice Actions. Defendants also sought a stay of all trial court proceedings pending the resolution of this writ petition. We granted the stay request and issued an order to show cause why a writ of mandate should not issue.
II
Discussion
A. The Blaskey E-mail Was a Privileged Attorney-client Communication and Dick Did Not Weave the Privilege
1. An Appellate Court May Review the Trial Court’s Privilege Ruling When It Is Inextricably Intertwined with the Disqucdification Ruling
Dick contends we should deny Defendants’ challenge to the trial court’s ruling the Blaskey e-mail is privileged because Defendants filed their writ petition more than 60 days after Dick served notice of that ruling. Despite the tinting, we will consider Defendants’ arguments challenging the *1100 privilege ruling on the merits because it is inextricably intertwined with the disqualification ruling and Dick fails to show how our consideration of the issue would prejudice him.
Although there is no statutory time limit on a common law writ petition, appellate courts generally apply the same 60-day time limit applicable to appeals. But unlike appeals, appellate courts have discretion to decide a writ petition filed after the 60-day period, and typically look to whether there is any prejudice to the opposing party in doing so. (People v. Superior Court (Lopez) (2005) 125 Cal.App.4th 1558, 1562-1563 [24 Cal.Rptr.3d 66].) Here, Dick fails to identify how deciding Defendants’ challenge to the privilege ruling will prejudice him.
More importantly, when deciding a timely writ petition challenging a trial court ruling, an appellate court also may review an unchallenged earlier ruling if it is inextricably intertwined with the issues presented on the writ petition. (Travelers Property Casualty Co. of America v. Superior Court (2013) 215 Cal.App.4th 561, 573, fn. 17 [155 Cal.Rptr.3d 459].) Here, the question whether the Blaskey e-mail was privileged is a “predicate issue[]” we must resolve before determining whether the trial court erred in disqualifying Gibson Dunn for reviewing and using the e-mail. (State Fund, supra, 70 Cal.App.4th at p. 651.) We therefore must resolve the privilege question on the merits.
2. Legal Principles Governing the Attorney-client Privilege
The attorney-client privilege is a legislative enactment, which courts have no power to expand or limit by creating exceptions. (Costco Wholesale Corp. v. Superior Court (2009) 47 Cal.4th 725, 739 [101 Cal.Rptr.3d 758, 219 P.3d 736] (Costco); McKesson HBOC, Inc. v. Superior Court (2004) 115 Cal.App.4th 1229, 1236 [9 Cal.Rptr.3d 812].) Based on the privilege, a client may refuse to disclose, and may prevent others from disclosing, confidential communications between a client and his or her attorney. (Evid. Code, § 954.)
A “ ‘confidential communication between client and lawyer’ ” is statutorily defined as “information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.” (Evid. Code, § 952.)
*1101 “Once the proponent makes a prima facie showing of a confidential attorney-client communication, it is presumed the communication is privileged and the burden shifts to the opponent to establish waiver, an exception, or that the privilege does not for some other reason apply.” (DP Pham, LLC v. Cheadle (2016) 246 Cal.App.4th 653, 659-660 [200 Cal.Rptr.3d 937] (Pham); see Evid. Code, § 917, subd. (a); Costco, supra, 47 Cal.4th at p. 733.)
The attorney-client privilege may be waived, but only by the holder of the privilege. (Pham, supra, 246 Cal.App.4th at p. 668.) A waiver results when the holder, without coercion, (1) has disclosed a significant part of the communication, or (2) has consented to the disclosure made by anyone else. (Evid. Code, § 912, subd. (a); State Fund, supra, 70 Cal.App.4th at p. 652.) Under the second method of waiver, “Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has legal standing and the opportunity to claim the privilege.” (Evid. Code, § 912, subd. (a).)
“Despite the statute’s declaration that any uncoerced ‘disclosure’ creates a waiver, courts have consistently held that inadvertent disclosures do not.” (Newark Unified School Dist. v. Superior Court (2015) 245 Cal.App.4th 887, 900 [190 Cal.Rptr.3d 721] (Newark).) As the Supreme Court explains, “the disclosure contemplated in Evidence Code section 912 involves some measure of choice and deliberation on the part of the privilege holder.” (Ardon v. City of Los Angeles (2016) 62 Cal.4th 1176, 1188 [199 Cal.Rptr.3d 743, 366 P.3d 996] (Ardon); see id. at p. 1189 [Evid. Code, § 912, subd. (a), requires “a voluntary and knowing disclosure” to waive privilege].) Similarly, in State Fund, the Court of Appeal concluded a waiver of the attorney-client privilege occurs only when there is an “intention to voluntarily relinquish a known right.” (State Fund, supra, 70 Cal.App.4th at p. 653; see Newark, at p. 900 [State Fund “read into the statute the requirement that a disclosure be ‘[]intentional,’ notwithstanding the failure of section 912 to distinguish between intentional and inadvertent disclosures. . . . This is consistent with the long-standing principle that a privilege is not waived in the absence of a manifest intent to waive”].)
The privilege holder’s characterization of his or her intent in disclosing a privileged communication is an important consideration in determining whether the holder waived the privilege, but is not necessarily dispositive. (Ardon, supra, 62 Cal.4th at pp. 1190-1191.) When determining whether an inadvertent disclosure waived the attorney-client privilege, a trial court must examine both the subjective intent of the privilege holder and any manifestation of the holder’s intent to disclose the information. (Ibid.; State Fund, *1102 supra, 70 Cal.App.4th at pp. 652-653.) Other relevant considerations include the precautions the holder took to maintain the privilege and the promptness with which the holder sought return of the inadvertently disclosed document. (Ardon, at p. 1191; State Fund, at p. 653.)
“ ‘ “When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it . ...” ’ ” (Pham, supra, 246 Cal.App.4th at p. 664; see Kerner v. Superior Court (2012) 206 Cal.App.4th 84, 110 [141 Cal.Rptr.3d 504].) Defendants contend we should employ the de novo standard in reviewing the trial court’s ruling because the facts are undisputed, and whether Dick waived the attorney-client privilege is therefore strictly a question of law. (See generally Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) Not so.
As explained below, there is conflicting evidence on whether Dick intended to waive the attorney-client privilege and competing inferences also may be drawn from the evidence. Substantial evidence is therefore the controlling standard of review. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2016) ¶ 8:60, p. 8-29 (Eisenberg, Civil Appeals and Writs) [“Even if the facts were admitted or uncontradicted, the appellate court will not substitute its deductions for the reasonable inferences actually or presumptively drawn by the trial court”]; see Escobar v. Flores (2010) 183 Cal.App.4th 737, 752 [107 Cal.Rptr.3d 596] (Escobar); Milton v. Perceptual Development Corp. (1997) 53 Cal.App.4th 861, 867 [62 Cal.Rptr.2d 98] (Milton).)
3. Substantial Evidence Supports the Trial Court’s Privilege Ruling
Defendants do not dispute the Blaskey e-mail was a privileged attorney-client communication, but contend the trial court erred “as a matter of law” in determining Dick did not waive the privilege. They argue the court “treat[ed] Dick’s own post-hoc characterization of his intent as dispositive, while ignoring (or declining to consider) the objective, contemporaneous evidence of Dick’s intent.” Defendants mischaracterize the trial court’s ruling and ignore the substantial evidence supporting the court’s conclusion Dick did not waive the privilege.
The trial court concluded Dick did not waive the attorney-client privilege because “[t]here is no basis to find intentional waiver.” In support, the court cited Dick’s “unequivocal[]” testimony that he did not intend to forward the Blaskey e-mail to Ninetta, and he did not know how it happened. The court *1103 also noted the privilege was not waived by Dick’s failure to request that Gavin and Pellizzon return the e-mail or to ask Defendants to return copies of the e-mail they produced in discovery. Linally, the court pointed out the “scenario” this case presented did not fit any of the recognized means for waiving the privilege.
Nothing in the trial court’s ruling suggests the court failed to consider all the evidence in reaching its decision, and Defendants do not cite anything in the record to support their contrary contention. We presume the trial court knew and properly applied the law absent evidence to the contrary. (Harris v. Stampolis (2016) 248 Cal.App.4th 484, 500-501 [204 Cal.Rptr.3d 1] (Harris); People v. Bush (2016) 245 Cal.App.4th 992, 1002 [200 Cal.Rptr.3d 190] (Bush).)
Moreover, the trial court was not required to make any findings to support its ruling on the privilege motion. (See Laabs v. City of Victorville (2008) 163 Cal.App.4th 1242, 1272 [78 Cal.Rptr.3d 372] (Laabs); Higdon v. Superior Court (1991) 227 Cal.App.3d 1667, 1671 [278 Cal.Rptr. 588] (Higdon).) We therefore review the court’s order by inferring it made all favorable findings that are supported by substantial evidence. (Clark v. Superior Court (2011) 196 Cal.App.4th 37, 47 [125 Cal.Rptr.3d 361] (Clark); Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co. (1998) 68 Cal.App.4th 856, 860 [80 Cal.Rptr.2d 634] (Federal Home Loan).)
Building on their contention that the trial court failed to consider the objective evidence of Dick’s intent to waive the privilege, Defendants assert we may infer factual findings to support the court’s ruling only if the record shows the court actually performed its factfinding function. (See Kemp Bros. Construction, Inc. v. Titan Electric Corp. (2007) 146 Cal.App.4th 1474, 1477 [53 Cal.Rptr.3d 673] (Kemp Bros.).) Again, Defendants misconstrue the trial court’s order, and therefore their reliance on Kemp Bros, is unavailing.
In Kemp Bros., the plaintiff sought a pretrial writ of attachment, which required the plaintiff to establish the probable validity of its breach of contract claim. The trial court concluded the plaintiff met that burden by showing the defendant was collaterally estopped from relitigating whether it breached the parties’ contract, but the court failed to consider whether the plaintiff presented evidence establishing the elements of its claim. The Court of Appeal reversed, finding collateral estoppel did not apply. In doing so, the Kemp Bros, court declined to consider whether it could infer findings to uphold the trial court’s decision because the record expressly showed the trial court never weighed the evidence to determine whether the plaintiff established the probable validity of its claims. (Kemp Bros., supra, 146 Cal.App.4th at pp. 1476-1478.) That simply is not the case here. As explained above, the *1104 record does not show the trial court failed to consider and weigh any evidence. Consequently, we may infer findings to support the trial court’s decision.
Although Dick’s testimony about his intent is not dispositive, it is an important consideration in deciding whether he waived the attorney-client privilege because waiver requires an intention to voluntarily waive a known right. (Ardon, supra, 62 Cal.4th at pp. 1188-1189; Newark, supra, 245 Cal.App.4th at p. 900; State Fund, supra, 70 Cal.App.4th at p. 653.) Moreover, substantial evidence besides Dick’s testimony supports the trial court’s finding Dick did not intentionally waive his attorney-client privilege: (1) the absence of any text in Dick’s e-mail to Ninetta explaining why he forwarded the Blaskey e-mail to her; (2) the forwarded e-mail came from Dick’s smartphone; (3) Dick’s age (nearly 80 years old); (4) his reduced dexterity caused by multiple sclerosis; (5) the lack of any connection between Ninetta and the MHI dispute discussed in the e-mail; (6) Dick’s testimony he rarely spoke with Ninetta and never about MHI; and (7) Gavin’s testimony that transmission of the e-mail was a mistake, Dick had no reason to forward the e-mail to Ninetta, and he never spoke with Dick about the e-mail. This constitutes substantial evidence supporting the trial court’s conclusion Dick inadvertently forwarded the Blaskey e-mail to Ninetta, and he had no intention of waiving the attorney-client privilege by doing so.
Ninetta’s disclosure of the Blaskey e-mail to Gavin, and Gavin’s disclosure to Rick, Cox, Pellizzon, and Lurie, cannot support a waiver of the privilege because Ninetta and Gavin are not holders of the privilege. (Evid. Code, § 912, subd. (a); Pham, supra, 246 Cal.App.4th at p. 668 [only privilege holder may waive privilege].) Substantial evidence supports the finding that Dick did not consent to these disclosures because Dick’s initial inadvertent e-mail to Ninetta led to these additional disclosures, and he did not learn about either his e-mail to Ninetta or these further disclosures until a year after they occurred. Indeed, Dick and his counsel did not learn about the disclosure to Lurie until nearly two years after his initial disclosure to Ninetta. Dick simply could not consent to disclosures he knew nothing about.
Defendants ignore the foregoing evidence, and instead argue Dick consented to the disclosures and waived the privilege because Blaskey failed to take precautions to prevent Dick’s initial disclosure, Dick intentionally forwarded the e-mail to Gavin to help Gavin mediate the MHI dispute, and both Dick and his various attorneys failed to take prompt and reasonable steps to recover copies of the Blaskey e-mail once the various disclosures were discovered. Defendants point to evidence showing Blaskey failed to prominently mark the e-mail as privileged and confidential when he sent it, when Gavin received the e-mail he was engaged in discussions with Dick, *1105 Rick, Cox, Lurie, and Blaskey to mediate the MHI dispute, the timing of Dick’s and his counsel’s efforts to recover all copies of the e-mail from third parties, Dick’s failure to ask Gavin and Pellizzon to return the e-mail, Dick’s failure to bring a motion in the Probate Action to declare the Blaskey e-mail privileged and require its return, and the failure of Dick’s counsel to suspend Mary Jo’s and Teri’s depositions in the Malpractice Actions when Logelman asked them questions about the e-mail.
At most, this creates a conflict in the evidence or supports additional inferences the trial court could have drawn about whether Dick and his counsel intended by their conduct to voluntarily waive the attorney-client privilege. But the governing substantial evidence standard of review requires us to resolve all conflicts and draw all reasonable inferences from the evidence in favor of the trial court’s order. (Leung v. Verdugo Hills Hospital (2012) 55 Cal.4th 291, 308 [145 Cal.Rptr.3d 553, 282 P.3d 1250]; Escobar, supra, 183 Cal.App.4th at p. 752 [“Under the substantial evidence standard of review, ‘where two or more different inferences can reasonably be drawn from the evidence, this court is without power to substitute its own inferences for those of the trial court and decide the case accordingly’ ”].)
Lor example, although the record shows Gavin attempted to mediate the MHI dispute involving Dick, Rick, and Cox, the evidence also shows Dick forwarded the Blaskey e-mail to Ninetta’s e-mail address, not Gavin’s. In addition, the evidence showed Gavin did not know why Dick forwarded the e-mail to Ninetta, and Gavin never spoke to Dick about the Blaskey e-mail. Similarly, although Defendants claim Dick and his counsel unreasonably delayed seeking the return of the e-mail, the record shows Dick’s counsel in the Probate Action immediately asserted the attorney-client privilege when Rick’s lawyer first disclosed the e-mail and demanded that he return all copies. Later in the Probate Action, Dick’s counsel again immediately objected and demanded that Logelman return all copies of the e-mail when he learned during Lurie’s deposition that Lurie had received a copy of the Blaskey e-mail. The evidence also showed Pellizzon never kept a copy of the e-mail after he reviewed it and Gavin could not locate the copy in his possession. Significantly, Dick in the Probate Action obtained an agreement that no one would use the contents of the Blaskey e-mail until the parties resolved the waiver dispute, and therefore a motion to declare the e-mail privileged was not necessary because the Probate Action settled before anyone used the Blaskey e-mail.[3] In the Malpractice Actions, Dick’s counsel *1106 objected to the e-mail and asked Logelman to return it when Logelman asked questions about it at Mary Jo’s and Teri’s depositions, but did not suspend the depositions because she was not familiar with the document and did not know the circumstances surrounding its disclosure.
Defendants correctly note a court may consider as relevant factors the existence of prominent markings identifying a document as privileged in deciding whether an inadvertent disclosure waived the privilege (State Fund, supra, 70 Cal.App.4th at p. 653), but the absence of any marking does not require the conclusion the holder waived the privilege (Rico, supra, 42 Cal.4th at p. 818 [no waiver for inadvertently disclosed document that was not marked as privileged]). Courts must consider the totality of the circumstances, and in doing so repeatedly have found inadvertently disclosed documents that were not marked as privileged retained their privileged status. (Id. at pp. 818-819 [document not marked]; Clark, supra, 196 Cal.App.4th at pp. 43, 52 [all inadvertently produced documents were privileged even though only some were marked as privileged].)
Under the substantial evidence standard of review, we may not reverse a trial court’s ruling unless the appellant shows the evidence required the trial court to reach a different conclusion. (See Roberts v. El Cajon Motors, Inc. (2011) 200 Cal.App.4th 832, 841 [133 Cal.Rptr.3d 350]; Horsford v. Board of Trustees of California State University (2005) 132 Cal.App.4th 359, 379 [33 Cal.Rptr.3d 644].) Defendants failed to satisfy that burden.
B. Gibson Dunn ’s Use of the Blaskey E-mail Violated the State Lund Rule
1. Governing Legal Principles on Inadvertently Disclosed Materials
State Fund is the seminal California decision defining a lawyer’s ethical obligations upon receiving another party’s attorney-client privileged materials. (State Fund, supra, 70 Cal.App.4th at pp. 656-657.) It established the following “standard governing the conduct of California lawyers”: “When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified. We do, however, hold that whenever a lawyer ascertains that he or she may have privileged *1107 attorney-client material that was inadvertently provided by another, that lawyer must notify the party entitled to the privilege of that fact.” (Ibid., italics added.)
In Rico, the Supreme Court quoted the first two sentences from the foregoing quote as the State Fund rule, and extended the rule to materials protected by the attorney work product doctrine because the rule is ‘“a fair and reasonable approach” that ‘“holds attorneys to a reasonable standard of professional conduct when confidential or privileged materials are inadvertently disclosed.” (Rico, supra, 42 Cal.4th at pp. 817, 818.) The Rico court also explained the State Fund rule establishes ‘“an objective standard” that asks “whether reasonably competent counsel, knowing the circumstances of the litigation, would have concluded the materials were privileged, how much review was reasonably necessary to draw that conclusion, and when counsel’s examination should have ended.” (Rico, at p. 818.)
The State Fund rule is “fundamentally based” on the sanctity of the attorney-client privilege and is designed to safeguard the confidential relationship between clients and their attorneys to promote full and open discussion of the facts and tactics surrounding individual legal matters. (State Fund, supra, 70 Cal.App.4th at p. 657; see Clark, supra, 196 Cal.App.4th at p. 48.) The rule also is designed to discourage unprofessional conduct (State Fund, at p. 657), and it recognizes that “ ‘[a]n attorney has an obligation not only to protect his client’s interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice.’ ”[4] (Rico, supra, 42 Cal.4th at p. 818; see Clark, at p. 48; State Fund, at p. 657.)
The parties point to different portions of the foregoing quote from State Fund as the standard for determining when an attorney’s State Fund duties are triggered. Defendants point to the language stating the duties are triggered when the materials “obviously . . . or . . . clearly appear” to be privileged and it is “reasonably apparent” the materials were inadvertently disclosed. (State Fund, supra, 70 Cal.App.4th at p. 656.) Dick points to the language stating the duties are triggered “whenever a lawyer ascertains that he or she may have privileged attorney-client material that was inadvertently provided by another.” (Id. at p. 657, italics added.) The parties do not cite, and we have not found, any authority reconciling the apparent conflict between these two standards for triggering an attorney’s State Fund duties.
*1108 The facts of this case do not require us to resolve this conflict because, as explained below, we conclude substantial evidence supports the trial court’s implied finding the circumstances surrounding the Blaskey e-mail satisfied the more stringent standard Defendants advocate for triggering Gibson Dunn’s State Fund duties. Nonetheless, we have three observations concerning the parties’ dispute over the proper standard.
Lirst, nearly all the cases applying the State Fund rule quote the language on which Defendants rely as the standard for triggering an attorney’s State Fund duties, while ignoring the language on which Dick relies. The few cases that include the “may have privileged material” language do so while also reciting the “obviously . . . or . . . clearly appear” standard, but do not adopt the language on which Dick relies as the trigger for an attorney’s State Fund duties. (See, e.g., Ardon, supra, 62 Cal.4th at p. 1187 [only acknowledging language on which Defendants rely]; Rico, supra, 42 Cal.4th at p. 817 [same]; Clark, supra, 196 Cal.App.4th at p. 48 [same]; Bak v. MCL Financial Group, Inc. (2009) 170 Cal.App.4th 1118, 1126-1127 [88 Cal.Rptr.3d 800] [same]; cf. Pham, supra, 246 Cal.App.4th at pp. 675-676 [acknowledging without specifically applying language on which Dick relies]; Collins v. State of California (2004) 121 Cal.App.4th 1112, 1131-1132 [18 Cal.Rptr.3d 112] [same].) Dick does not cite a single case applying the language on which he relies as the trigger for an attorney’s State Fund duties.
Second, by using the terms “appear” and “apparent” in the language on which Defendants rely, even with the qualifiers “obviously,” “clearly,” and “reasonably,” the State Fund court made clear that the privileged nature of the materials and the inadvertence of their disclosure need not be established to a legal certainty to trigger an attorney’s State Fund duties.
Linally, a reasonable way to reconcile the issue is to interpret State Fund as establishing two standards, with each one applying to slightly different situations. The language Defendants quote applies when an attorney receives materials that obviously or clearly appear to be privileged and it is reasonably apparent the materials were inadvertently disclosed. In that situation, the attorney receiving the materials must refrain from examining them any more than is necessary to determine their privileged nature, immediately notify the privilege holder the attorney has received materials that appear to be privileged, attempt to reach an agreement with the privilege holder about the materials’ privileged nature and their appropriate use, and resort to the court for guidance if an agreement cannot be reached. The attorney must not further review or use the materials for any purpose while the issue remains in dispute.
The language Dick quotes applies when an attorney ascertains that he or she received materials that are not obviously or clearly privileged, but *1109 nonetheless may be privileged materials that were inadvertently disclosed. This plainly is a lower standard, and it triggers a more limited response. In this situation, the attorney’s duty is simply to notify the privilege holder that the attorney may have privileged documents that were inadvertently disclosed. At that point, the onus shifts to the privilege holder to take appropriate steps to protect the materials if the holder believes the materials are privileged and were inadvertently disclosed.
Regardless of how the State Fund rule is stated, Defendants and our dissenting colleague seek to limit it to privileged materials an attorney receives through the inadvertence of opposing counsel during litigation. Although the State Fund rule originated in the context of one attorney inadvertently producing his client’s privileged documents to the opponent’s attorney during litigation, neither the statement of the rule nor the policy underlying it supports limiting the scope of the rule to that one circumstance. Moreover, subsequent case law applying the rule has not limited it to that circumstance.
In Clark, for example, the Court of Appeal applied the State Fund rule to an attorney who received an opponent’s privileged documents from his own client rather than the opposing party or its attorney. There, the plaintiff stole some of his employer’s privileged documents when the employer fired him, and then provided the documents to his attorney for use in the plaintiff’s lawsuit against the employer. (Clark, supra, 196 Cal.App.4th at pp. 42-44.) The Clark, court concluded the State Fund rule applied because the documents were privileged and the employer did not intend to disclose them. The attorney’s receipt of the documents from his own client before the litigation began did not factor into the court’s analysis, nor did the court rely on the client’s theft of the documents in determining whether the State Fund rule applied. (Clark, at pp. 52-54.) Adopting Defendants’ limitation would perversely permit the use of stolen, privileged materials, but not those inadvertently disclosed.[5]
*1110 In Rico, the Supreme Court applied the State Fund rule to attorney work product notes that a plaintiff’s attorney acquired during litigation, but were not produced either by the defense attorney who created the notes or by the defendant he represented. The plaintiffs attorney argued a court reporter mistakenly gave him the notes during a deposition, but defense counsel argued the plaintiffs attorney stole the notes from his file during the same deposition. {Rico, supra, 42 Cal.4th at pp. 811-812.) The Supreme Court concluded the State Fund rule applied by simply examining whether the notes were clearly privileged and whether it was reasonably apparent their disclosure was inadvertent. Whether the plaintiffs attorney wrongfully took the notes, or the court reporter mistakenly gave them to the plaintiffs attorney, did not influence the court’s analysis because the record showed the defendant’s attorney did not intend to disclose the notes, and therefore the disclosure was inadvertent under either scenario.[6] {Rico, at pp. 818-819.)
2. Substantial Evidence Supports the Trial Court’s Application of the State fund Rule
Defendants challenge the sufficiency of the evidence to support the trial court’s conclusion Gibson Dunn violated its State Fund obligations, arguing the record lacks evidence showing the Blaskey e-mail obviously appeared to be privileged, it was reasonably apparent the e-mail was inadvertently disclosed, or Gibson Dunn failed to comply with its State Fund duties to the extent they were triggered. We disagree.
As with the privilege motion, the trial court was not required to make any express findings to support its ruling on the disqualification motion, and we are required to infer the court made all findings necessary to support its conclusion. (Clark, supra, 196 Cal.App.4th at pp. 46-47; Laabs, supra, 163 Cal.App.4th at p. 1272; Federal Home Loan, supra, 68 Cal.App.4th at p. 860; Higdon, supra, 227 Cal.App.3d at p. 1671.) As Clark, explained, “ ‘where there are no express findings, we must review the trial court’s [decision] based on implied findings that are supported by substantial evidence.’ ” (Clark, at p. 47.) We also presume the court knew and properly applied the law absent evidence to the contrary. (Harris, supra, 248 Cal.App.4th at pp. 500-501; Bush, supra, 245 Cal.App.4th at p. 1002.) The substantial evidence standard therefore governs our review of the trial court’s implied *1111 findings that Gibson Dunn’s State Fund obligations were triggered and it violated those obligations through its use of the Blaskey e-mail.[7] (Clark, at pp. 46-17, 52-54.)
Here, the evidence shows that when Gibson Dunn in June 2015 discovered the Blaskey e-mail in its client’s files, it knew Blaskey was Dick’s personal attorney representing Dick in his dispute with Rick and Cox over control of MHI, and Lurie potentially was an adverse party to Dick based on Lurie’s actions regarding the Hausman family trusts and MHI. A cursory review of the e-mail showed it was from Blaskey to Dick, with copies to Blaskey’s law partner, Kessel, and Dick’s personal assistant and advisor, Lindsay. The e-mail summarized a meeting among the parties to the dispute and their attorneys. This constitutes substantial evidence supporting the conclusion the Blaskey e-mail was a communication made in the course of an attorney-client relationship, and therefore it was presumptively privileged. (Evid. Code, § 917, subd. (a); Costco, supra, 47 Cal.4th at p. 733; Pham, supra, 246 Cal.App.4th at p. 665.) Under these circumstances, the Blaskey e-mail was a presumptively privileged document and therefore was an “obviously privileged” document under the State Fund rule. (Clark, supra, 196 Cal.App.4th at p. 53 [“Under Costco, once the examination showed a document had been transmitted between an attorney representing [the defendant] and either an officer or employee of [the defendant], that examination would suffice to ascertain the materials are privileged, and any further examination would exceed permissible limits”].)
*1112 This conclusion is further supported by evidence showing Rick’s attorney in the Probate Action concluded the State Fund rule applied when he found a copy of the Blaskey e-mail in his client’s documents. Specifically, after reviewing the e-mail, Rick’s counsel pulled the e-mail from his client’s document production, sent it to Dick’s counsel under separate cover, and asked whether Dick claimed the e-mail was privileged because the original e-mail appeared to be a confidential communication between Dick and his personal attorney.
Defendants contend the Blaskey e-mail was not obviously privileged because Lindsay was an original recipient of the e-mail and Gibson Dunn only knew Lindsay as MHI’s bookkeeper. According to Defendants, Lindsay was an unnecessary party to the communication and therefore her inclusion prevented the privilege from attaching. (See Evid. Code, § 952 [defining “ ‘confidential communication between client and lawyer’ ”].) Defendants cite no evidence they did not know Lindsay also was Dick’s personal assistant and advisor when Gibson Dunn discovered the e-mail, produced it in the Probate Action, and defended Lurie’s August 13, 2015 deposition. (See Zurich American Ins. Co. v. Superior Court (2007) 155 Cal.App.4th 1485, 1501 [66 Cal.Rptr.3d 833] [disclosure to client’s secretary, assistant, advisor, or other representative does not prevent attorney-client privilege from attaching].) Nonetheless, any question about Lindsay’s position as Dick’s personal assistant and advisor was removed on August 19, 2015, when Gibson Dunn deposed her and she testified she also worked for Dick personally. That was several days before Gibson Dunn deposed Mary Jo and Teri about the e-mail.
Defendants also contend the Blaskey e-mail was not obviously privileged because Gibson Dunn reasonably concluded Dick had waived the privilege by forwarding it to Ninetta and then allowing her to forward it to Gavin, who then provided it to Rick, Cox, Pellizzon, and Lurie. But the circumstances here did not permit Gibson Dunn to decide on its own whether the privilege was waived. As explained above, the original e-mail from Blaskey to Dick was presumptively privileged as a confidential communication between attorney and client during the course of the representation. Those facts triggered Gibson Dunn’s State Fund obligations. (Clark, supra, 196 Cal.App.4th at p. 53.) Contrary to Defendants’ suggestion, an attorney’s State Fund duties are not limited to situations where the materials are indisputably privileged, leaving no basis to infer the privilege has been waived or an exception applies.
Lor example, formal opinion No. 2013-188 of the California State Bar Standing Committee on Professional Responsibility and Conduct (State Bar, Lormal Opinion No. 2013-188) concludes an attorney’s State Fund duties are triggered when the attorney receives a communication that is presumptively *1113 privileged as a confidential communication between another attorney and his or her client, even if “the [receiving] attorney reasonably believes that the communication may not be privileged because of the crime-fraud exception to the attorney-client privilege.” (State Bar, Formal Opn. No. 2013-188, at p. 1; see Coldren v. Hart, King & Coldren, Inc. (2015) 239 Cal.App.4th 237, 250, fn. 8 [190 Cal.Rptr.3d 644] [although not binding on courts, formal opinions from California State Bar may be persuasive authority].) That opinion presents the hypothetical of an attorney who sues a company for fraud and receives an anonymous e-mail and attachment from a former company employee. The e-mail explains the attachment is a confidential communication between the company and its attorney that proves the company planned and perpetrated the alleged fraud with the advice and assistance of its counsel. (State Bar, Formal Opn. No. 2013-188, at p. 1.) The formal opinion explains the potential application of the crime-fraud exception “does not vitiate [the attorney’s duties under State Fund and Rico” (State Bar, Formal Opn. No. 2013-188, at p. 4), and the attorney may not ethically read the attachment to the e-mail. Instead, the attorney must notify opposing counsel, refrain from further reviewing the communication, and otherwise proceed as described in State Fund. (State Bar, Formal Opn. No. 2013-188, at pp. 5-6.)
That is a logical application of the State Fund rule. Allowing opposing counsel to avoid their State Fund obligations any time they can fashion a colorable argument for overcoming the privilege would create an exception that would swallow the State Fund rule. As State Fund and the other cases explain, an attorney’s obligation is to review the materials no more than necessary to determine whether they are privileged, and then notify the privilege holder’s counsel. At that point, the parties may confer about whether the material is privileged and whether there has been a waiver. If the parties are unable to reach an agreement either side may seek guidance from the trial court. (Rico, supra, 42 Cal.4th at p. 817; Clark, supra, 196 Cal.App.4th at p. 48; State Fund, supra, 70 Cal.App.4th at pp. 656-657.) The attorney receiving the material, however, is not permitted to act as judge and unilaterally make that determination.
Defendants complain this application of the State Fund rule will allow the privilege holder and its counsel to unduly delay a lawsuit and engage in other forms of gamesmanship that prejudice the party whose counsel received the materials. But the materials at issue must obviously or clearly appear privileged, and the recipient of apparently privileged materials may expedite resolution of any dispute by bringing its own motion seeking the court’s guidance. The trial court then may impose sanctions and issue other appropriate orders to address the privilege holder’s alleged abuse of the State Fund rule. The important policy considerations underlying the attorney-client privilege and the State Fund rule, however, do not allow the recipient of *1114 inadvertently disclosed documents to unilaterally determine the privilege has been waived and then proceed to use the documents. In doing so, the recipient risks that the trial court will draw a different conclusion, which would expose the recipient to adverse consequences for violating the State Fund rule, including disqualification as attorney of record. In close cases, prudence requires following the State Fund procedures.
Next, Defendants argue Gibson Dunn’s State Fund duties were not triggered because many of the same facts that purportedly showed the Blaskey e-mail was not obviously privileged also showed it was not reasonably apparent the e-mail had been disclosed inadvertently. Specifically, Defendants point to evidence showing Gibson Dunn found the e-mail in its clients’ own electronic documents while preparing Defendants’ response to a subpoena in the Probate Action, Lurie received the e-mail because Gavin forwarded it to him well before any litigation commenced, Gavin then was acting as an intermediary seeking to resolve the dispute over MHI, and Gavin had a copy of the e-mail because Dick forwarded it to Ninetta, who forwarded it to Gavin. None of this overcomes the substantial evidence supporting the trial court’s ruling for the same reasons already discussed.
Gibson Dunn’s discovery of the e-mail in its clients’ own files and Lurie’s receipt of the e-mail from Gavin when he mediated the MHI dispute does not render Dick’s disclosure of the e-mail any less inadvertent. On its face, the original e-mail still was a presumptively privileged communication between attorney and client discussing the MHI dispute. Dick’s transmission of the e-mail to Ninetta, which eventually reached Lurie, suggests the possibility Dick may have waived the attorney-client privilege, but the State Fund rule does not allow Gibson Dunn to assume that he did. Dick’s e-mail transmission sheds no light on why he shared this presumptively privileged e-mail with Ninetta, and therefore provides no assurances he intended to waive the privilege.[8] As explained above, the State Fund rule establishes an objective standard and substantial evidence supports the conclusion it was reasonably apparent the Blaskey e-mail was inadvertently disclosed. Indeed, the same *1115 basic facts led Rick’s Probate Action counsel to determine the State Fund rule applied and required him to notify Dick’s counsel and not use the e-mail.[9]
Moreover, even if the face of the Blaskey e-mail and the circumstances surrounding its disclosure were not sufficient to put Gibson Dunn on notice it likely received an inadvertently disclosed, privileged document, the objections of Dick’s counsel at Lurie’s deposition in the Probate Action removed any doubt. (Clark, supra, 196 Cal.App.4th at pp. 52-53 [counsel’s warning on privilege holder’s behalf triggers an opposing attorney’s State Fund duties].) At that deposition, Rick’s counsel asked Lurie questions based on a copy of the Blaskey e-mail that Defendants produced in response to the subpoena served on them in the Probate Action. Dick’s counsel immediately *1116 objected, asserting the Blaskey e-mail was privileged and that it had been disclosed inadvertently. He not only demanded that Rick’s counsel return all copies under their earlier agreement to preserve Dick’s privilege claim concerning the e-mail, but he also demanded that Gibson Dunn return all its copies. Although Logelman asserted the e-mail was not privileged and that Gibson Dunn was not obligated to return it, the objections by Dick’s attorney constitute substantial evidence that Gibson Dunn reasonably should have realized the Blaskey e-mail was an inadvertently disclosed, privileged document subject to the State Fund rule.[10]
To support their contention any inadvertence in Dick’s disclosure was not readily apparent, Defendants also point to a letter Dick’s Malpractice Actions counsel wrote in November 2015. Dick’s attorney stated she wanted to conduct additional discovery of the facts underlying the privilege dispute before bringing a motion to resolve the issue. According to Defendants, if Dick’s counsel wanted to conduct discovery on this issue in November 2015, then it could not have been apparent to Gibson Dunn in August 2015 that Dick’s disclosure was inadvertent. Defendants misconstrue this letter and the governing standards.
Dick’s attorney consistently maintained that Dick’s disclosure of the Blaskey e-mail was inadvertent and State Fund required Gibson Dunn to return the e-mail. Dick’s counsel made clear in this letter she wanted to conduct discovery on Defendants’ waiver theory. Specifically, she sought to depose everyone who received a copy of the e-mail to establish Dick did not intentionally disclose the e-mail to them. As explained above, the State Fund rule applies whenever a reasonably competent attorney would conclude the materials are obviously or clearly privileged and it is reasonably apparent they were inadvertently disclosed. The rule applies to prevent further disclosures while the parties resolve the dispute over whether the document *1117 remains privileged. Conducting discovery to address Gibson Dunn’s claim the document was not privileged is consistent with the State Fund rule.
Linally, Defendants contend Gibson Dunn ceased using the Blaskey e-mail when it received the September 4, 2015 letter from Dick’s counsel providing a detailed explanation to support Dick’s claim the e-mail was privileged and that he had not waived the privilege. Before receiving that letter, Defendants contend Gibson Dunn did not have sufficient information to determine the State Fund rule applied. Not so.
As explained above, the Blaskey e-mail on its face and the circumstances surrounding its disclosure supports the trial court’s finding Gibson Dunn should have realized the State Fund rule applied when it originally produced the e-mail in July 2015. At a minimum, the record supports the conclusion Gibson Dunn should have realized the State Fund rule applied after Lurie’s August 13, 2015 deposition when Dick’s Probate Action attorney objected that the e-mail was an inadvertently disclosed, privileged document and demanded Logelman and Gibson Dunn return all their copies. At that point, the State Fund rule required Gibson Dunn to stop using the Blaskey e-mail and either return it to Dick or schedule further discussions with his lawyers to evaluate the status of the e-mail. Defendants’ contentions that Dick may have waived the privilege did not prevent the State Fund rule from applying before September 4. Rather, these contentions merely raised an issue for the parties to resolve in their discussions. Gibson Dunn, however, violated its State Fund duties by using the Blaskey e-mail and reading substantial portions of it into the record at Mary Jo’s and Teri’s depositions on August 24 and 25, quoting the e-mail in interrogatory responses it served on August 24, producing a copy of the e-mail in responding to a discovery request on September 14, and submitting a copy to the court in opposition to the privilege motion in Lebruary 2016.[11]
*1118 Defendants contend Gibson Dunn did not violate its State Fund duties by questioning Mary Jo and Teri about the Blaskey e-mail because Dick’s lawyer in the Malpractice Actions allowed Logelman to ask questions about the e-mail subject to a later motion to strike. But the evidence showed that Dick’s counsel in the Malpractice Actions objected to Logelman using the e-mail at these depositions. She explained she was not familiar with the e-mail and needed to learn more about it and how Defendants obtained it, but as she read the lengthy e-mail during the depositions she objected it was an attorney-client privileged communication, it appeared to have been inadvertently disclosed, and she demanded Logelman return it to Dick. Logelman disputed the e-mail was privileged and refused to return it, but he failed to tell Dick’s attorney that Dick’s other lawyer in the Probate Action had objected to the e-mail at Lurie’s deposition a few days earlier, had demanded Logelman return it, and had reached an agreement with all parties to the Probate Action to preserve the privilege until they resolved the waiver dispute. The trial court reasonably could conclude Logelman attempted to exploit Dick’s representation by separate counsel in the Probate Action and Malpractice Actions. This constitutes substantial evidence supporting the conclusion Gibson Dunn violated its ethical obligations under the State Fund rule. (See Rico, supra, 42 Cal.4th at pp. 815, fn. 8, 819 [attorney receiving opponent’s attorney work product disqualified for violating State Fund duties, and work product protection was not waived by failing to assert it during deposition when attorney defending deposition lacked sufficient information to know opponent was using his cocounsel’s work product].)
Moreover, Defendants’ contention ignores the affirmative nature of the duties imposed by the State Fund rule when an attorney receives materials that are likely privileged and were likely disclosed inadvertently. An attorney’s State Fund obligations are not contingent on the privilege holder asserting an objection or otherwise convincing the attorney who received the materials that they are privileged and were disclosed inadvertently. Rather, the obligations are immediately triggered when a review of the materials would lead a reasonably competent attorney to conclude the materials are clearly or obviously privileged and it is reasonably apparent they were disclosed inadvertently.
We do not suggest the privilege holder is excused from taking reasonable steps to preserve the privilege and recover inadvertently disclosed materials. A privilege holder may waive the privilege, and render the State Fund rule inapplicable, by failing to take reasonable steps necessary to preserve the privilege. (See Evid. Code, § 912, subd. (a).) As explained above, however, substantial evidence supports the trial court’s implied findings that Dick did not waive the attorney-client privilege because he and his attorneys acted reasonably to preserve the attorney-client privilege during the short time period that elapsed between their discovery at Lurie’s deposition that Gibson *1119 Dunn had a copy of the Blaskey e-mail, and Gibson Dunn’s use of the e-mail two weeks later at Mary Jo’s and Teri’s depositions.[12]
C. Disqualification Was an Appropriate Remedy
1. Governing Legal Principles on Attorney Disqualification
“A disqualification motion involves a conflict between a client’s right to counsel of his or her choice, on the one hand, and the need to maintain ethical standards of professional responsibility, on the other. [Citation.] Although disqualification necessarily impinges on a litigant’s right to counsel of his or her choice, the decision on a disqualification motion ‘involves more than just the interests of the parties.’ [Citation.] When ruling on a disqualification motion, ‘[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one’s choice must yield to ethical considerations that affect the fundamental principles of our judicial process.’ ” (Clark, supra, 196 Cal.App.4th at pp. 47-48; see People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc. (1999) 20 Cal.4th 1135, 1145 [86 Cal.Rptr.2d 816, 980 P.2d 371].) Protecting the *1120 confidentiality of communications between attorney and client is a fundamental principle of our judicial process and an opposing attorney who breaches that principle may be disqualified from further participation in the litigation. (SpeeDee Oil, at p. 1146; Clark, at p. 48.)
In the context of inadvertently disclosed, attorney-client communications, “ ‘ “ ‘[mjere exposure’ ” to an adversary’s confidences is insufficient, standing alone, to warrant an attorney’s disqualification.’ ” (Clark, supra, 196 Cal.App.4th at p. 54; see Rico, supra, 42 Cal.4th at p. 819.) “ ‘Protecting the integrity of judicial proceedings does not require so draconian a rule [because it] would nullify a party’s right to representation by chosen counsel any time inadvertence or devious design put an adversary’s confidences in an attorney’s mailbox.’ ” (State Fund, supra, 70 Cal.App.4th at p. 657; see Rico, at p. 819.) Nonetheless, “ ‘ “in an appropriate case, disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in [accordance with his or her State Fund duties], assuming other factors compel disqualification.” ’ ” (Clark, at p. 54; see Rico, at p. 819; State Fund, at p. 657.)
“[Disqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed”; an affirmative showing of existing injury from the misuse of privileged information is not required. (Clark, supra, 196 Cal.App.4th at p. 55.) A trial court, however, may not order disqualification “ ‘simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings.’ ” (Oaks Management Corporation v. Superior Court (2006) 145 Cal.App.4th 453, 467 [51 Cal.Rptr.3d 561], italics omitted (Oaks Management), quoting Gregori v. Bank of America (1989) 207 Cal.App.3d 291, 309 [254 Cal.Rptr. 853] (Gregori).)
“[T]he significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court. Thus, disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation. Though such information cannot be unlearned, and the lawyer who obtained it cannot be prevented from giving it to others, disqualification still serves the useful purpose of eliminating from the case the attorney who could most effectively exploit the unfair advantage.” (Gregori, supra, 207 Cal.App.3d at p. 309; see Oaks Management, supra, 145 Cal.App.4th at p. 467.)
*1121 “A trial court’s ruling on a disqualification motion is reviewed under the deferential abuse of discretion standard. [Citations.] ‘In exercising its discretion, the trial court must make a reasoned judgment that complies with applicable legal principles and policies.’ [Citations.] ‘The order is subject to reversal only when there is no reasonable basis for the trial court’s decision.’ ” (Clark, supra, 196 Cal.App.4th at p. 46.)
“Even under [the abuse of discretion] standard, there is still a substantial evidence component. We defer to the trial court’s factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its discretion.” (Tire Distributors, Inc. v. Cobrae (2005) 132 Cal.App.4th 538, 544 [33 Cal.Rptr.3d 761]; see Clark, supra, 196 Cal.App.4th at p. 46.) “The trial court’s order is ‘ “presumed correct; ah intendments and presumptions are indulged to support [it]; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court’s resolution of any factual disputes arising from the evidence is conclusive.” ’ ” (Clark, at pp. 46-47.)
2. The Trial Court Did Not Abuse Its Discretion in Disqualifying Gibson Dunn
Defendants contend the trial court erred in disqualifying Gibson Dunn because the court based its ruling “solely upon Gibson Dunn’s prior ‘use and review’ ” of the Blaskey e-mail without considering whether past use of that information would have a substantial and continuing effect on future proceedings in the Malpractice Actions. According to Defendants, the court applied an improper legal standard by concluding Gibson Dunn’s disqualification followed automatically from the court’s finding Gibson Dunn violated its State Fund obligations. We disagree and find no abuse of discretion.
In its minute order, the trial court explained it disqualified Gibson Dunn because “[c]ounsel’s review and use of the e[-]mail at deposition goes beyond ‘mere exposure’ and raises the likelihood that this could affect the outcome of these proceedings both in terms of [Dick’s] rights against use of his privileged communications against him and in terms of the integrity of these judicial proceedings and public confidence in them.”
The trial court’s explanation demonstrates it understood it could not base disqualification solely on Gibson Dunn’s violation of its State Fund duties, but also must determine whether there was a likelihood the violation would impact the outcome of the Malprachce Actions and the public’s trust in both the scrupulous administration of justice and the integrity of the bar. (Clark, supra, 196 Cal.App.4th at pp. 54 & fn. 9, 55; see Oaks Management, supra, 145 Cal.App.4th at p. 467.) Nothing in the court’s ruling supports Defendants’ contenhon the court disqualified Gibson Dunn solely because it violated *1122 its State Fund duties by reviewing and using the Blaskey e-mail. Absent evidence to the contrary, we presume the trial court knew and properly applied the law. (Harris, supra, 248 Cal.App.4th at pp. 500-501; Bush, supra, 245 Cal.App.4th at p. 1002.)
Defendants also fault the trial court for failing to make specific findings explaining how Gibson Dunn’s violation of its State Fund duties would impact the outcome in the Malpractice Actions. The law, however, does not require the trial court to make any findings to support or explain its ruling, and Defendants did not request any. (Laabs, supra, 163 Cal.App.4th at p. 1272; Higdon, supra, 227 Cal.App.3d at p. 1671.) We therefore review the trial court’s ruling by inferring it made all findings favorable to its decision that are supported by substantial evidence. (Clark, supra, 196 Cal.App.4th at P- 47.)
The record shows Gibson Dunn received the Blaskey e-mail from its client and fully reviewed the communication before producing it in response to Dick’s subpoena in the Probate Action. At Lurie’s deposition in the Probate Action, Rick’s counsel questioned Lurie about the circumstances surrounding the e-mail, prompting Dick’s counsel to immediately object the e-mail was an inadvertently disclosed attorney-client communication and demand that Gibson Dunn return its copies as required by State Fund. Gibson Dunn refused to return the Blaskey e-mail, denying that it was privileged and that the State Fund rule applied. Gibson Dunn then further reviewed and analyzed the e-mail to determine its relevance to the claims and defenses in the Malpractice Actions, formulated deposition questions based on the e-mail’s content, and deposed May Jo and Teri about the e-mail while reading portions of it into the record. Gibson Dunn also identified and quoted the e-mail in its interrogatory responses that described evidence supporting Defendants’ defenses, produced the e-mail in discovery, and lodged a copy with the trial court in opposition to the privilege motion.
This constitutes substantial evidence supporting the trial court’s finding disqualification was necessary to prevent future prejudice or harm to Dick from Gibson Dunn’s exploitation of the e-mail’s contents. Indeed, this evidence shows Gibson Dunn thought it could use the e-mail to Defendants’ advantage in opposing Dick’s claims. Why else would Gibson Dunn identify the e-mail as relevant evidence in interrogatory responses and depose Mary Jo and Teri about the e-mail in the face of Dick’s strenuous objection that the e-mail was an inadvertently disclosed, privileged document that must be returned? Clark, established that an attorney who knowingly uses inadvertently disclosed, privileged materials to depose witnesses may affect the outcome of the lawsuit and therefore justifies a trial court’s exercise of its discretion to disqualify the attorney. (Clark, supra, 196 Cal.App.4th at p. 55 & fn. 11.)
*1123 Substantial evidence also supports a finding that Gibson Dunn’s continued representation of Defendants could trigger doubts about the integrity of the judicial process because whenever Gibson Dunn’s advocacy touched on the August 22 meeting summarized in the Blaskey e-mail, questions inevitably would surface about the source of Gibson Dunn’s knowledge. (Clark, supra, 196 Cal.App.4th at pp. 54-55.) Even if Gibson Dunn’s knowledge came from a legitimate, nonprivileged source, Gibson Dunn’s previous access to the Blaskey e-mail “could undermine the public trust and confidence in the integrity of the adjudicatory process.” (Id. at p. 55.) On this record, we cannot say the trial court abused its discretion in selecting disqualification as the appropriate remedy for Gibson Dunn’s violation of its State Fund duties.[13] (Clark, at p. 55.)
Defendants contend the trial court abused its discretion because there is no evidence Dick will suffer any future harm based on Gibson Dunn’s review and use of the Blaskey e-mail. According to Defendants, the trial court’s privilege order prevents future harm to Dick because it prohibits Gibson Dunn from further using the e-mail by requiring the firm to seal its copies and also those portions of the deposition transcripts that refer to its contents. *1124 Defendants contend Gibson Dunn has complied with the court’s order and therefore disqualification was unnecessary. Defendants misconstrue the governing law.
As explained above, disqualification does not require evidence of an existing injury from the use of the inadvertently disclosed materials. (Clark, supra, 196 Cal.App.4th at p. 55.) Disqualification is proper as a prophylactic measure to prevent potential future harm to Dick from information Gibson Dunn should not have used. (Ibid.) The critical question is whether there is a genuine likelihood that Gibson Dunn’s review and use of the Blaskey e-mail will affect the outcome of the Malpractice Actions. (Oaks Management, supra, 145 Cal.App.4th at p. 467; Gregori, supra, 207 Cal.App.3d at p. 309.) We review the trial court’s answer to that question for abuse of discretion because the trial court has superior knowledge about the parties’ claims and defenses, and the impact of the inadvertently disclosed information on those claims and defenses. (Clark, at pp. 46-47.)
“An abuse of discretion may be found only if ‘ “no judge could have reasonably reached the challenged result. [Citation.] ‘[A]s long as there exists “a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be . . . set aside (O’Donoghue v. Superior Court (2013) 219 Cal.App.4th 245, 269 [161 Cal.Rptr.3d 609].) We may not substitute our judgment for that of the trial court, and provided the trial court properly applied the law, we may reverse the trial court’s exercise of its discretion only when the facts required the trial court to reach a different result. (Avant! Corp. v. Superior Court (2000) 79 Cal.App.4th 876, 881-882 [94 Cal.Rptr.2d 505]; Cahill v. San Diego Gas & Electric Co. (2011) 194 Cal.App.4th 939, 957 [124 Cal.Rptr.3d 78].)
The trial court’s privilege order prevented Gibson Dunn from using the Blaskey e-mail and the portions of the deposition transcripts that referred to its content. But the court’s order could not prevent Gibson Dunn from using the knowledge it acquired by carefully reviewing and analyzing the e-mail even if the e-mail itself is no longer available to the firm. (See Clark, supra, 196 Cal.App.4th at pp. 41M-2. 54-55 [rejecting contention trial court abused its discretion by disqualifying attorney instead of entering a protective order precluding use of inadvertently disclosed materials].)
Even after a trial court has taken remedial action to protect the privilege, “disqualification still serves the useful purpose of eliminating from the case the attorney who could most effectively exploit the unfair advantage [acquired through the earlier review and use of the inadvertently disclosed, privileged materials].” (Gregori, supra, 207 Cal.App.3d at p. 309; see Oaks Management, supra, 145 Cal.App.4th at p. 467.) Here, the Gibson Dunn *1125 attorney who received and improperly reviewed the inadvertently disclosed documents has a greater capacity than any replacement counsel to exploit the information contained in those documents because the original attorney has personal knowledge of the information. Any knowledge replacement counsel receives about the documents would be secondhand information received from others who may have seen the documents, and therefore it is unlikely replacement counsel could use the information as effectively. (Gregori, at p. 309; Chronometrics, Inc. v. Sysgen, Inc. (1980) 110 Cal.App.3d 597, 607-608 [168 Cal.Rptr. 196].)
If we accepted Defendants’ argument, a trial court never could disqualify an attorney who received, reviewed, and used inadvertently disclosed, privileged materials unless the attorney continued to review and use the materials after the trial court found them privileged and ordered them returned, sealed, or destroyed. That is not the law. As we have explained, substantial evidence supports the finding that disqualification was appropriate to prevent future harm to Dick despite the privilege order because the Blaskey e-mail included information that Gibson Dunn believed it could use to Defendants’ advantage. Moreover, the privilege order does nothing to lessen the damage caused to the public’s trust in the administration of justice and the integrity of the bar based on Gibson Dunn’s previous access and extensive use of the Blaskey e-mail. On this record, the privilege order did not require the trial court to deny the disqualification motion.
Linally, Defendants contend Clark, is distinguishable because the attorney there used one of several inadvertently disclosed, privileged documents as the basis for one of his client’s claims, and the attorney and client stated they would use the documents at trial even after acknowledging their privileged nature. According to Defendants, those egregious facts are not present here and therefore Clark, does not support the trial court’s decision. Defendants misconstrue Clark.
Although the attorney in Clark, used one of the documents as the basis for the claim, Clark, explained the trial court did not abuse its discretion in disqualifying the attorney even if that document later was found not to be privileged. Clark, explained disqualification was appropriate because the attorney also used other privileged documents to question witnesses at their depositions. (Clark, supra, 196 Cal.App.4th at p. 55 & fn. 11.) Moreover, the statements by the attorney and client that they would use the documents at trial occurred before their opponent filed the disqualification motion. (Id. at pp. 44, 55 & fn. 11.) Nothing in Clark, supports Defendants’ suggestion disqualification was ordered in that case based on the attorney’s or client’s allegedly professed intent to use the inadvertently disclosed, privileged documents even after the trial court found they were privileged. Clark. *1126 therefore is not meaningfully different than this case and supports the trial court’s exercise of its discretion to disqualify Gibson Dunn.
Ill
Disposition
The petition for writ of mandate or other appropriate relief is denied. This court’s order staying all trial court proceedings is dissolved upon the finality of this opinion. Plaintiffs shall recover their costs for the proceedings in this court.
O’Leary, P. J., concurred.

 The other plaintiffs and real parties in interest are Mary Jo Hausman (Mary Jo), John Gavin Hausman (John), and Teresa Lynn Hausman (Teri). Because members of the same family are involved in this matter, we use their' first names for the sake of clarity, and no disrespect is intended. We collectively refer to Dick, Mary Jo, John, and Teri as Plaintiffs.

 Dick did not file a similar motion in the Probate Action, and that case settled shortly after the ruling on the privilege motion in the Malpractice Actions.

 Defendants contend Rick’s identification of the Blaskey e-mail on his trial exhibit list in the Probate Action shows Dick failed to take reasonable steps to recover the e-mail. But listing the e-mail as an exhibit does not disclose its contents and all parties acknowledged the trial court in the Probate Action would have to make a ruling at trial to determine whether the e-mail was privileged before it could be offered as evidence.

 To justify its conclusion the State Fund rule does not apply here, the dissent acknowledges only the rule’s goal of safeguarding the confidential relationship between attorney and client. (Dis. opn., post, at p. 1128.) The dissent ignores the rule’s further purpose of discouraging unprofessional conduct and its recognition of an attorney’s ethical obligation to respect the interests of other attorneys, the judiciary, and the administration of justice. State Fund and Rico both relied on these additional policy considerations in establishing the State Fund rule. (State Fund, supra, 70 Cal.App.4th at p. 657; see Rico, supra, 42 Cal.4th at p. 818.)

 The dissent states, “The Clark court merely assumed the State Fund rule applied and analyzed whether it was violated.” (Dis. opn., post, at p. 1128.) Not so. In Clark, it was undisputed the client stole the privileged communications from his employer and toned them over to his attorney, and therefore no issue existed as to the inadvertence of the disclosure. (Clark supra. 196 Cal.App.4th at pp. 43-44, 52.) The Clark court therefore examined the evidence concerning the communications to determine whether they were privileged and the extent to which a reasonably competent attorney would need to review the communications to determine their privileged nature. The court also considered evidence regarding the extent of the attorney’s review of the communications to determine whether it exceeded what was reasonably necessary to determine whether the communications were privileged. (Clark, at pp. 51-54.) Contrary to the dissent’s suggestion, that is an analysis of whether the State Fund rule applied, not an assumption.

 Rico debunks the dissent’s suggestion that Clark is distinguishable from this case because the client in Clark wrongfully obtained the privileged documents he turned over to his attorney, but “[flhere was nothing wrongful about Lurie’s acquisition or possession of the Blaskey e-mail.” (Dis. opn., post, at p. 1128.) Neither Rico nor Clark require a wrongful acquisition for the State Fund rule to apply to documents an attorney received from his or her client.

 Citing Kemp Bros., the dissent concludes we “cannot” imply any findings to support the trial court’s decision because “[t]he record demonstrates the trial court never weighed the evidence and performed the factfinding function regarding Gibson Dunn’s asserted State Fund obligations.” (Dis. opn., post, at p. 1130.) Not true. As explained above, Kemp Bros, observed an appellate court should not imply findings to support a trial court ruling only when the record expressly shows the trial court never performed its factfinding function concerning the issue on which the appellate court would otherwise imply findings. (Kemp Bros., supra. 146 Cal.App.4th at pp. 1476-1478.) Here, the record shows the trial court received evidence from the parties and decided Dick’s motion based on that evidence. Neither Defendants nor the dissent cites anything in the record to show the trial court expressly refused to perform its factfinding function on a particular' issue.
The dissent also asserts we should determine the State Fund rule does not apply in this case as a matter of law because the decisive facts are undisputed and the rule’s application therefore presents a question of law. (Dis. opn., post, at p. 1130.) We disagree. The dissent conveniently ignores many of the disputed facts we have described in this opinion relating to the disclosure of the Blaskey e-mail and whether the State Fund rule applies. Moreover, even if we assume the central facts were not in dispute, the trial court nevertheless had to resolve the competing inferences presented by those facts. Of course, the prevailing standard of review requires us to presume the court made the necessary inferences required to support its decision. (Eisenberg, Civil Appeals and Writs, supra. ¶ 8:60, p. 8-29; see Escobar, supra. 183 Cal.App.4th at p. 752; Milton, supra, 53 Cal.App.4th at p. 867.)

 The dissent accuses us of “improperly equat[ing] the presumption of privilege (Evid. Code, § 917, subd. (a)), with a presumption of inadvertence.” (Dis. opn., post, at p. 1132.) Not so. The presumption of privilege arises from the facts surrounding the original transmission of the e-mail from Blaskey to Dick during their attorney-client relationship (Evid. Code, § 917, subd. (a); Costco, supra, 47 Cal.4th at p. 733; Pham, supra, 246 Cal.App.4th at p. 665), and that presumption supports the trial court’s determination the e-mail was obviously privileged under the State Fund rule (Clark, supra, 196 Cal.App.4th at p. 53). Our inadvertent disclosure analysis, however, focuses on the facts surrounding Dick’s later disclosure of the Blaskey e-mail to Ninetta, her disclosure to Gavin, and Gavin’s disclosure to Rick, Cox, Pellizzon, and Lurie. We are at a loss to see how we equated the presumption of privilege with a presumption of inadvertence.

 Citing Great American Assurance Co. v. Liberty Surplus Ins. Corp. (N.D.Cal. 2009) 669 F.Supp.2d 1084, the dissent concludes it was not reasonably apparent that Dick inadvertently disclosed the Blaskey e-mail. (Dis. opn., post, at p. 1129.) Great American does not support the dissent’s conclusion. There, the federal district court concluded the State Fund rule did not apply based on that court’s factual determinations that the privilege holder waived the attorney-client privilege by sharing an insurance coverage opinion with an outside insurance broker, and the facts surrounding the communications among the parties did not establish inadvertent disclosure. (Great American, at pp. 1091-1092, 1093-1094.) The dissent fails to understand that we, as an appellate court, are not free to make those factual determinations. Rather, we are limited to deciding whether substantial evidence supports the trial court’s express and implied factual determinations. Here, the trial court determined Dick did not waive the attorney-client privilege and the disclosure was inadvertent. We may overturn those determinations only if the record lacks substantial evidence to support them, even if the evidence also would support a different conclusion. (Clark, supra. 196 Cal.App.4th at pp. 46-47.) As explained above, substantial evidence supports the trial court’s determinations, and therefore we must uphold the trial court’s decision. The district court’s initial factual findings in Great American provide no guidance for applying the standard of review on appeal. This procedural difference may explain why no California appellate court has cited Great American.
Taking the issue a step further, the dissent also concludes the record lacks substantial evidence to support the trial court’s implied finding it was reasonably apparent the Blaskey e-mail was inadvertently disclosed. (Dis. opn., post, at pp. 1131-1132.) Although the dissent acknowledges the governing substantial evidence standard of review, it fails to properly apply it. Under that standard, “The trial court’s order is ‘ “presumed correct; all intendments and presumptions are indulged to support [it]; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court’s resolution of any factual disputes arising from the evidence is conclusive.” ’ [Citations.] Hence, we presume the trial court found in [Dick’s] favor on ‘all disputed factual issues.’ ... ‘In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.’ [Citation.] ‘If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court’s express or implied findings supported by substantial evidence.’ ” (Clark, supra. 196 Cal.App.4th at pp. 46-47.) The dissent, however, does precisely what appellate courts may not do. It looks only to the evidence favorable to the «¿«prevailing party while ignoring the evidence supporting the trial court’s implied findings.

 Citing State Fund, the dissent concludes the objections of Dick’s counsel are irrelevant because “Gibson Dunn’s State Fund obligations were triggered, if at all, at the time Gibson Dunn found it had received the privileged document.” (Dis. opn., post, at pp. 1132-133.) State Fund, however, imposes no such limitation and the dissent provides no explanation to support its contrary conclusion. As explained above, Clark relied on warnings and objections from opposing counsel in concluding an attorney’s State Fund duties were triggered. (Clark, supra, 196 Cal.App.4th at pp. 52-53.) That is a logical application because the State Fund rule establishes an objective standard that examines whether a reasonably competent attorney, knowing the facts of the case, would determine a document was clearly privileged and it was reasonably apparent its disclosure was inadvertent. (Rico, supra, 42 Cal.4th at p. 818.) Objections or warnings by the privilege holder’s lawyer may provide the missing information necessary to enable an opposing attorney to determine the State Fund rule applies. No policy or other reason justifies the dissent’s limitation on the State Fund rule. Obviously, an attorney cannot violate the State Fund rule until he or she possesses sufficient information to allow a reasonably competent attorney to determine the rule has been triggered, but once an attorney has sufficient information, the rule applies and further review or use the privileged material is prohibited.

 Assuming the State Fund rule applied, the dissent concludes Gibson Dunn discharged its State Fund duties by producing the Blaskey e-mail in July 2015, as part of Defendants’ response to the subpoena Dick served in the Probate Action. According to the dissent, the State Fund rule simply required Gibson Dunn to “notify” Dick’s attorneys they had a copy of the Blaskey e-mail and the production did so. (Dis. opn., post, at p. 1133.) We disagree. Including the e-mail as part of a larger document production does not notify the privilege holder that the producing party possesses a communication that appears to be privileged. (State Fund, supra, 70 Cal.App.4th at p. 656.) “Notify” means to inform someone of something or bring to his or her attention. (See Dictionary.com <http://www.dictionary.com/browse/notify> [as of Apr. 18, 2017].) More importantly, an attorney’s State Fund duties are not limited to merely notifying the privilege holder that the attorney possesses a communication that appeal's to be privileged. The attorney also must refrain from examining the communication any more than necessary to determine its privileged nature, and the attorney may not use the communication to prosecute or defend the action. (Clark, supra, 196 Cal.App.4th at pp. 53-54.) As explained above, Gibson Dunn continued to review the Blaskey e-mail after producing it, formulated and asked deposition questions based on it, and read portions of it into the record at two depositions.

 The dissent prompts more head scratching when it concludes the State Fund rule does not apply because Dick’s attorneys failed to take reasonable steps to preserve the attorney-client privilege after learning the Blaskey e-mail had been disclosed. (Dis. opn., post, at p. 1127.) First, the dissent asserts Dick’s attorneys should have done more after Rick’s attorney in the Probate Action alerted them that Dick had sent the Blaskey e-mail to Ninetta, including conducting an investigation to determine whether the disclosure went beyond Ninetta, Gavin, Rick, Cox, and Pellizzon. (Ibid.) The record, however, fails to show that anyone knew the disclosure went beyond those individuals. Dick’s attorneys immediately obtained an agreement from the attorney for Rick and Cox that he would collect and destroy all copies of the e-mail they had except one, which they kept to litigate the dispute over whether the e-mail remained privileged. Although Pellizzon testified he saw a copy of the e-mail, he also testified he never kept one. Similarly, Gavin testified he could not find a copy of the e-mail. As for Gavin forwarding the e-mail to Lurie, he testified he did not recall doing so. This is substantial evidence supporting the trial court’s implied finding Dick’s attorneys acted reasonably because the disclosure went no further than these individuals and all available copies were recovered.
The dissent also faults Dick’s attorneys for failing to take action to preserve the privilege after Gibson Dunn’s production of the e-mail in the Probate Action. (Dis. opn., post, at p. 1127.) The record supports the trial court’s implied finding Dick’s attorneys acted appropriately. Gibson Dunn produced the e-mail as paid of a “several thousand page document production ... on or about July 31, 2015.” Dick’s attorneys first learned that Gibson Dunn had a copy of the e-mail when Rick’s attorney questioned Lurie about it at his deposition on August 13, 2015. Dick’s attorneys immediately objected to the questions about the e-mail, asserted it was an inadvertently produced, privileged document, and demanded Gibson Dunn return all copies. The dissent apparently faults Dick’s attorneys for not finding the e-mail in the document production during the two weeks that elapsed between the production and Lurie’s deposition. Based on the size of the production, we agree with the trial court’s implied finding that Dick’s attorneys acted reasonably.

 The dissent concludes the trial court erred in disqualifying Gibson Dunn because, “until today, no court has ever applied the State Fund rule in any case which bears any material resemblance to this case. So here, as in State Fund, the disputed conduct has never before been condemned by any decision, statute or Rule of Professional Conduct applicable in this statef, and therefore] it may not be equated to a failure to act in good faith such that disqualification is warranted.” (Dis. opn., post, at p. 1134.) The dissent misconstrues State Fund, the facts of this case, and the standards for disqualification.
In State Fund, the trial court imposed monetary sanctions against an attorney for refusing to return his opponent’s inadvertently disclosed, privileged documents. The trial court concluded the attorney’s conduct constituted bad faith conduct under Code of Civil Procedure section 128.5 because it violated an American Bar Association (ABA) ethics opinion addressing an attorney’s ethical obligations in handling such documents. (State Fund. supra. 70 Cal.App.4th at 651.) The State Fund court reversed the sanctions, explaining the ABA opinion could not serve as a basis for imposing monetary sanctions when no “decision, statute, or Rule of Professional Conduct applicable in this state” previously had condemned the conduct. (State Fund, at pp. 655-656.) The State Fund court went on to announce the foregoing State Fund rule as the standard governing all future conduct by California attorneys. (Id. at pp. 656-657.)
In contrast to State Fund, when Gibson Dunn engaged in its conduct, numerous decisions prohibited an attorney from excessively reviewing an opponent’s inadvertently produced, privileged documents, and held an attorney could be disqualified for violating that prohibition. (See, e.g., Rico, supra. 42 Cal.4th at p. 810; Clark, supra. 196 Cal.App.4th at pp. 54-55.) Whether the dissent considers any of those cases to be analogous to the specific facts of this case is irrelevant because State Fund and its progeny undeniably prohibit the category of conduct at issue here. Moreover, the trial court impliedly found that Gibson Dunn refused to return the Blaskey e-mail, continued to review it, and used it to depose witnesses in the face of repeated objections and warnings by Dick’s attorneys. Substantial evidence supports those findings and they make disqualification a potential remedy for addressing Gibson Dunn’s conduct. Finally, contrary to the dissent’s suggestion, a trial court is not required to find an attorney acted in bad faith to disqualify the attorney for violating the State Fund rule.