Filed 12/20/23  Rothstein v. Samsung Electronics America CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PAUL S. ROTHSTEIN, | B324148 |
| Appellant, | Los Angeles County Super. Ct. No. 20STCV20962 |
| v. | |
| SAMSUNG ELECTRONICS AMERICA, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maren E. Nelson, Judge. Reversed.

Paul S. Rothstein, in pro. per.; Spitz Law Group, Jeffrey Spitz; Center for Constitutional Litigation and Robert S. Peck for Appellant.

Hunton Andrews Kurth, Brandon M. Marvisi, Michael J. Mueller, and Trevor S. Cox for Defendants and Respondents.

# INTRODUCTION

Appellant Paul S. Rothstein appeals the order granting the motion to revoke his *pro hac vice* admission, filed by defendants Samsung Electronics America, Inc. (SEA) and Samsung Electronics Co., Ltd. (together, defendants). The court concluded that Rothstein violated rule 4.2 of the State Bar Rules of Professional Conduct (Rule 4.2) by contacting non-party A-Plus Electronics and Engineering (A-Plus), an authorized service center (ASC) of defendants, because Rothstein argued that ASCs are defendants' agents and Rothstein knew that defendants were represented. On appeal, Rothstein contends, among other things, that the court failed to decide whether A-Plus was defendants' agent, erred in concluding that the topic of the communications was any act or omission by A-Plus that could be imputed to defendants, erred in applying a rebuttable presumption of disqualification, and failed to find that the violation would have an ongoing effect on litigation. Although Rothstein's conduct gives us pause, we agree with him in part and reverse.

## FACTS AND PROCEDURAL BACKGROUND

This appeal arises from a putative class action alleging that defendants violated Civil Code[1] section 1793.03, subdivision (b), of the Song-Beverly Consumer Warranty Act (§ 1790 et seq.) by failing to make replacement parts for plasma televisions available for the required seven years post-manufacture.[2]

---

[1] All undesignated statutory references are to the Civil Code.

[2] Section 1793.03, subdivision (b), provides: "Every manufacturer making an express warranty with respect to an electronic or appliance product described in subdivision (h), (i), (j), or (k) of Section 9801 of the

Rothstein, who is a member of the State Bar of Florida, filed the instant action against defendants and their ASC, Service Quick, Inc. (Service Quick),[3] on May 29, 2020 on behalf of plaintiff Manuel Rivera-Melo. In July 2020, the court granted Rothstein's application for *pro hac vice* admission. The operative second amended complaint (SAC), filed on November 17, 2021, added Eli Cesaletti as a plaintiff.

The merits of the underlying litigation are not at issue. Rather, this appeal concerns the court's order revoking Rothstein's *pro hac vice* status based on its finding that Rothstein violated Rule 4.2 when he directly contacted A-Plus, one of defendants' ASCs, during the pendency of the litigation.

Prior to filing the instant action, Rothstein filed a complaint in federal court in the Northern District of California in April 2018 on behalf of Alexis Bronson against defendants, captioned *Bronson v. Samsung Electronics America, Inc.* (N.D. Cal., No. 3:18-cv-02300-WHA) (*Bronson*).[4] In June 2019,

---

Business and Professions Code, with a wholesale price to the retailer of one hundred dollars ($100) or more, shall make available to service and repair facilities sufficient service literature and functional parts to effect the repair of a product for at least seven years after the date a product model or type was manufactured, regardless of whether the seven-year period exceeds the warranty period for the product."

[3] Service Quick has since been dismissed from the action.

[4] In May 2023, Rothstein filed a motion for judicial notice in this appeal. By order filed June 12, 2023, we deferred ruling on the motion to our decision of this appeal on the merits. Rothstein seeks judicial notice of briefs (Exs. A, F), complaints (Exs. B, H), discovery responses (Exs. C, D), an order (Ex. E), dismissals (Exs. I, J), and dockets (Exs. G, K) from *Bronson* and another federal action brought by Cesaletti. "This court may take judicial notice of court records outside the record on appeal, including unpublished orders and decisions in a related federal

Rothstein persuaded the judge in the *Bronson* action that an ASC's alleged statement to a consumer that replacement parts were not available fell within an exception to the federal hearsay rules because "[t]he statements made by the *authorized* repair-center employee . . . were made by Samsung's agent." The *Bronson* action settled in May 2021 and was dismissed.

Cesaletti, represented by Rothstein, previously sued defendants in federal court on December 1, 2020. He voluntarily dismissed his claims on March 16, 2021.

Rothstein's litigation strategy in this case involved establishing that A-Plus and other ASCs, including Service Quick, were Samsung's agents. The operative second amended complaint alleges that the defendants failed to maintain an adequate inventory of parts or otherwise make functional parts available to its ASCs for the required seven years, in violation of

---

proceeding. [Citations.] However, a litigant must demonstrate that the matter as to which judicial notice is sought is both relevant to and helpful toward resolving the matters before this court." (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418.) The federal actions involved the same defendants and the same counsel for plaintiffs and defendants. Both parties discussed the existence and timing of the federal actions below, and most of the materials of which Rothstein seeks judicial notice merely substantiate those discussions. Defendants cited Exhibit E in their briefing before the trial court and Exhibit D is already part of the record. We deny the request with respect to Exhibits A, C, and F, which we do not find helpful or necessary to our decision, but otherwise grant the motion. (Evid. Code, § 452, subd. (d).) We do not take judicial notice of the truth of the factual matters asserted in the documents. (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1090.)

4

section 1793.03, subdivision (b).[5] Plaintiffs allege that defendants' ASCs told them that parts were not available to repair their Samsung plasma televisions. Plaintiffs further allege that ASCs act as defendants' apparent and/or actual agents in any representations about the availability of parts to consumers. The defendants and the ASCs, as their agents, make up the communication chain necessary to make repair parts available to consumers to effect repairs through ASCs. Defendants communicate the availability of parts through a national database, to which ASCs have access. As the final link to consumers, ASCs, with actual or apparent agency on behalf of Samsung, communicate the availability of repair parts. Plaintiffs allege that defendants are liable for any failure in the communication chain.

During a hearing on March 22, 2021, Rothstein argued: "[W]e're prepared to show the court that the part was not available for Mr. Melo when he went to the authorized service provider, that the authorized service provider, an agent of Samsung, did not know that — if the part was available, they were not provided information that that part was available. They're an agent of Samsung." Similarly, at a status conference on August 24, 2021, Rothstein argued: "[T]he guts of this case at this point are that, one, Samsung is responsible for the communications of its agents. And if it's an authorized service provider, they provided incorrect information to the consumer. Does the consumer have a right to rely on that information? We

---

[5] The original complaint and first amended complaint similarly alleged that Service Quick "acted with apparent or actual agency on behalf of [defendants]."

submit that it does." In March 2022, Rothstein, on behalf of plaintiffs, served requests for admission on SEA, including: "Admit that in October 2020, [A-Plus] was SEA's agent."

On June 14, 2022, defendants filed a motion to revoke the *pro hac vice* status of Rothstein, and effectively disqualify him from representing plaintiffs, contending that Rothstein violated Rule 4.2 (b)(2) based on communications Rothstein had with A-Plus. The motion was accompanied by the declarations of two A-Plus employees. Michael Braude, a project manager for A-Plus, stated in his declaration that he spoke with Rothstein "in the summer of 2019 or 2020" and that Rothstein "asked questions about replacement PDP assemblies for a Samsung plasma television," and Braude referred him to one of Braude's colleagues, Carmen Huma. In December of 2020, Braude received a call from Rothstein and a woman. He believed that Rothstein asked about the availability of parts for a Samsung plasma television and asked Braude to provide a written statement that a part was not available. Braude again referred Rothstein to Huma.

In her declaration, Huma stated that, to the best of her recollection, she received at least two calls from Rothstein and a woman in his office. She believed the first was in the summer of 2019, but was not certain. Huma believed that, during the first call, Rothstein asked about the availability of replacement parts for the PN51F8500 Samsung plasma television and for a list of customers who had tried to get their televisions repaired but could not due to a lack of replacement parts. Huma did not remember what specific information she provided. Huma later received another call from Rothstein and the woman in his office and believed that they asked about the availability of

6

replacement parts for Samsung plasma televisions generally, rather than a specific model. Rothstein asked for an affidavit regarding the availability of parts, which Huma did not provide. Using a program on her phone that permanently logs the phone numbers of all callers, Huma verified that she had received at least one call from Rothstein's office phone number. Huma recalled that she received enough calls from Rothstein that she blocked his number, although she did not have record of this because she had switched phones since the time she received his calls.

In further support of their motion, defendants cited Cesaletti's response to defendants' request for "all the facts supporting the contention in Paragraph 50 of the Second Amended/Supplemental Class Action Complaint that '[u]pon information and belief, Samsung Authorized Service Centers, tell consumers that parts are not available to repair their Samsung plasma televisions.' " In a supplemental response, Cesaletti stated: "I have become aware through this litigation that Mike at A-plus, through his associate name Carmen (phonetic), could check the Samsung GSPN database for parts. In or around October 7–10, 2020 and again in December 2020, Mike indicated that after checking with Carmen who consulted GSPN, that he knows the parts were not available and they were not available for a long time. When he checked the model number of my television, he indicated that the parts were not available."

Defendants' attorney further declared: "On April 29, 2022, counsel for the parties, including Mr. Rothstein and I, conferred by telephone. Mr. Rothstein refused to substantively discuss his communications with A-Plus, including whether those

communications violated California Rule of Professional Conduct 4.2.”

In response to the motion, plaintiffs argued that Samsung did "not identify any information [Braude and Huma] actually revealed that would bias the litigation" and thus failed to demonstrate that any new, material information revealed in communications with A-Plus would have any continuing effect on the litigation. They further contended that Rothstein's limited communications with A-Plus did not violate Rule 4.2 because "Samsung does not contend that ASCs are officers, directors, or managing agents of the corporation to fall within the 'control group' specified in Rule 4.2(B)(2)" and because its communications with A-Plus involved only its percipient knowledge, not its own actions or omissions concerning the dispute. They also argued that actual knowledge of representation is a bright line test for violation of Rule 4.2, that "Samsung has not provided any evidence that A-Plus was represented," and that, "[w]ithout actual representation, there would be no way to have actual knowledge of representation."

Plaintiffs further argued that defendants had consented to the communication by refusing to answer discovery on behalf of its purported agents and by advising plaintiffs to seek discovery directly from ASCs in the *Bronson* litigation, and that consent provides a complete defense to a would-be violation. Finally, they argued that defendants had been on notice since 2019 that the information that ASCs relayed to customers based on their review of defendants' database was at issue, yet defendants "did *nothing* to eliminate the possibility of ex parte contact with ASCs."

In a declaration filed with the response, Rothstein stated that he had limited communications with A-Plus in October and December of 2020. No person with whom he spoke at A-Plus indicated that either an attorney represented A-Plus or he should speak to an attorney. Rothstein represented that, before he communicated with A-Plus, he "had a great body of information from Samsung through previous litigation and independent fact investigation," that he had "no notes and no memory that I obtained any new material information from my communications with A-Plus," and that his "communications with A-Plus did not provide any information other than general information about the availability of parts as reported on Samsung's database." He further noted that the communications with A-Plus took place before Cesaletti was added as a plaintiff and before he alleged that A-Plus was an agent of defendants. Rothstein also stated that, in the *Bronson* action, Rothstein prepared subpoenas for repair facilities and recalled "Samsung's counsel directing the plaintiffs to obtain information from ASCs because that was not information Samsung had or was willing to obtain." His "communications with A-Plus took place after Samsung refused to respond to discovery in *Bronson/Hardin* on behalf of its agents."

Plaintiffs also submitted the declaration of Robert L. Kehr, an expert in attorney professional responsibility, in support of the response. Kehr opined that Rothstein did not violate Rule 4.2, and that there is no proper basis for disqualification even if there were a Rule 4.2 violation. Kehr opined that the purpose of Rule 4.2 (b)(2) is to prevent ex parte contact with employees who engaged in acts or conduct for which the employer might be liable. Because section 1793.03 imposes liability only on a

9

manufacturer, he opined that there is no conduct on the part of A-Plus for which defendants might be liable because any liability would rest solely on defendants' own conduct and thus Rule 4.2(b)(2) does not apply. Kehr further opined that disqualification was justified only if there might be a continuing litigation effect, i.e., if the lawyer had obtained material information he could use to his advantage from an individual who was off limits under Rule 4.2. However, defendants had not demonstrated a continuing litigation effect or that Rothstein had obtained material information.

On reply, defendants argued that Rule 4.2(b) applies to Rothstein's communications, that they did not consent to Rothstein's communications with A-Plus, and that the Kehr declaration should be given no weight. For the first time, they also argued that revocation of his *pro hac vice* admission was appropriate because "[c]ourts employ a rebuttable presumption of disqualification when the challenged party alone holds the information wrongfully obtained." Defendants cited *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 596 (*Complex Asbestos*) for this proposition. Defendants further asserted that Rothstein "continues to hide the specific information that A-Plus provided to him during the course of his improper communications" and "never discloses to the Court how many conversations he had with A-Plus employees, which employees he spoke with, when he spoke with them, or what the employees told him."

Following oral argument, the court issued an order granting the motion to revoke Rothstein's *pro hac vice* status. The court declined to consider the Kehr declaration on the grounds that "[l]egal conclusions, even if contained in an expert opinion,

10

are improper and inadmissible." The court concluded that Rothstein violated Rule 4.2 because "[w]hen Rothstein called A-Plus, Plaintiffs were pursuing a theory of the case based on the agency status of the ASCs." The court rejected the argument that its ruling on demurrer that section 1793.03, subdivision (b), "does not make manufacturers liable for inaccuracies if an ASC advises a customer that a needed part is not available when such parts are available" did not "foreclose all possibilities that Samsung could be liable for its ASCs conduct." The court also observed that Rothstein contacted A-Plus long before its ruling on defendants' demurrer. The court further rejected the arguments that no violation had occurred because, at the time of the challenged communications, Cesaletti (who had sought repairs from A-Plus) was not yet a party, it was not yet pleaded that A-Plus was defendants' agent, and defendants had consented to Rothstein's contact by telling Rothstein to contact ASCs directly in the *Bronson* action.

The court concluded that revocation of Rothstein's *pro hac vice* status was warranted. Three factors were relevant to the court's determination: (1) "the extent of information gained by Rothstein as a result of the communications is unclear," which led it to apply the *Complex Asbestos* rebuttable presumption; (2) "Plaintiffs have indicated that they do not wish to continue with this action and will seek to be dismissed from it" and any prejudice to the unnamed clients who will seek to be substituted in is "thin"; and (3) that the motion to disqualify was not the result of tactical abuse but defendants' "legitimate concern that its reading of the statute may be incorrect, that Rothstein will improperly use the statements, and that such statements are likely to have a ' "continuing effect on future judicial

11

proceedings." ' [Citation.]" In holding that the *Complex Asbestos* rebuttable presumption applied, the court adopted defendants' formulation of the presumption as applying "when the challenged party alone holds the information wrongfully obtained." The court concluded that "maintenance of the integrity of the proceedings is paramount," "Plaintiffs will suffer little or no prejudice," and "[t]he prejudice alleged to be suffered by other clients of Rothstein is not persuasive."

Rothstein filed a petition for writ of mandate, which this court denied.[6] He also timely appealed.

## DISCUSSION

Rothstein contends that the trial court erred both in finding a violation of Rule 4.2 and, if a violation did occur, in revoking his pro hac vice admission. He contends that the court could not find a violation of Rule 4.2 without making a dispositive finding that A-Plus is an agent of defendants, that the court's prior ruling establishes that defendants could not face liability for the acts or omissions of ASCs, and that the communications did not concern the acts or omissions of the ASCs. Rothstein asserts that defendants repeatedly denied agency and refused to answer

---

[6] "A summary denial of a writ petition does not establish law of the case whether or not that denial is intended to be on the merits or is based on some other reason." (*Kowis v. Howard* (1992) 3 Cal.4th 888, 899.) "When the court denies a writ petition without issuing an alternative writ, it does not take jurisdiction over the case; it does not give the legal issue full plenary review. A summary denial does not decide a 'cause' [citation], and should therefore not be given law of the case effect." (*Id.* at p. 897.)

12

discovery on behalf of ASCs in the *Bronson* action, and therefore consented to Rothstein's communications with them.

Rothstein further argues that revocation was not an appropriate remedy because defendants failed to show that the communications with A-Plus would have a continuing effect on the litigation. He contends that there should have been no burden shifting under *Complex Asbestos* because: (1) defendants failed to identify "the nature of the information and its material relationship to the proceeding"; (2) he was not the only person with access to the information exchanged in communications with Samsung's witnesses; and (3) "employees of A-Plus, did not breach any obligation of confidentiality and were not employed by or even very cooperative with Rothstein." Finally, he argues that the court abused its discretion in excluding the Kehr declaration.[7]

Defendants argue that the court properly found a violation of Rule 4.2 because Rothstein's communications with A-Plus involved matters that "may be" binding on defendants. Defendants refute that they invited the communications by

---

[7] Defendants have moved to strike portions of Rothstein's reply brief because they claim the argument that A-Plus was not a represented party was not made below or in Rothstein's opening brief. However, Rothstein argued below in connection with the actual knowledge requirement of Rule 4.2 that "Samsung has not shown any evidence that A-Plus was represented (either by Samsung's counsel or otherwise)" and "Samsung has not provided any evidence that A-Plus was represented." Further, Rothstein argued in his opening brief: "There is nothing to suggest that A-Plus was actually represented or told Rothstein it was represented by Samsung's attorneys related to the subject matter of the conversations." Although we do not disagree with defendants that the argument was made in greater depth in the reply than any point prior, we deny the motion. We note, however, that this argument does not form the basis of our opinion.

declining to respond to discovery requests on behalf of ASCs in *Bronson*. Defendants also contend that revocation of Rothstein's *pro hac vice* status was appropriate because the court did find an ongoing litigation effect and because the application of the *Complex Asbestos* rebuttable presumption of disqualification was appropriate. Finally, they contend that the court properly declined to consider the Kehr declaration.

We conclude that the court did not abuse its discretion in excluding the Kehr declaration. Without reaching all of the many arguments advanced by the parties on the merits, we also conclude that the order revoking Rothstein's *pro hac vice* status must be reversed.

## 1. The Exclusion of Rothstein's Expert Evidence

### 1.1. Standard of Review

" 'We apply the abuse of discretion standard when reviewing the trial court's rulings on evidentiary objections.' [Citation.] An 'erroneous evidentiary ruling requires reversal only if "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error." [Citation.]' [Citation.]" (*Daimler Trucks North America LLC v. Superior Court* (2022) 80 Cal.App.5th 946, 960.) This includes a trial court's exclusion of an expert opinion. (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

### 1.2. The court did not abuse its discretion in disregarding the Kehr declaration.

The court excluded the Kehr declaration on the ground that "[l]egal conclusions, even if contained in an expert opinion, are improper and inadmissible." The court cited several authorities

14

for this proposition, including *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525. Rothstein argues that the court erred because expert declarations are routinely admitted in cases concerning the revocation of *pro hac vice* status (see *Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1703 (*Sheller*); *Snider v. Superior Court* (2003) 113 Cal.App.4th 1187, 1196 (*Snider*)), as well as in legal malpractice cases.

In neither *Sheller* nor *Snider* was the admissibility of an expert opinion challenged or discussed in any depth. Moreover, it is unclear why the admission of expert testimony in legal malpractice cases is relevant here. "The general rule is that expert evidence is required to establish legal malpractice," unless "the alleged malpractice is so utterly egregious and obvious that no expert testimony is needed." (*O'Shea v. Lindenberg* (2021) 64 Cal.App.5th 228, 236–237.) This is because "the legal malpractice suit is but one variety of negligence action and is governed by the general doctrines of pleading and proof prevailing in negligence actions" and "questions of fact in a case such as the one at bench require expert evidence." (*Lipscomb v. Krause* (1978) 87 Cal.App.3d 970, 975.) Rothstein has not identified, nor are we aware of, a general rule requiring expert testimony for a motion to disqualify or revoke *pro hac vice* admission based on a violation of the State Bar Rules of Professional Conduct.

Although "[a]dmissible expert opinion testimony is not objectionable just because it embraces the ultimate issue to be decided by the trier of fact," the court correctly observed that "an expert may not testify about issues of law or draw legal conclusions." (*Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 122.) Kehr drew a legal conclusion as to whether Rothstein violated Rule 4.2

15

based on facts he assumed to be true. While we do not dispute that the testimony of ethics experts could be useful in cases such as this, the court's decision not to consider the Kehr declaration was reasonable under the law and was not an abuse of discretion.

## 2. The Revocation of Rothstein's *Pro Hac Vice* Admission

### 2.1. Standard of Review

"Code of Civil Procedure section 128, subdivision (a)(5) gives courts the power to order a lawyer's disqualification." (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 831.) "An attorney appearing *pro hac vice* 'is subject to the jurisdiction of the courts of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of California.' " (*Sheller*, *supra*, 158 Cal.App.4th at p. 1716, quoting Cal. Rules of Court, rule 9.40(f).) "Given that a California trial court's inherent power includes the authority to disqualify a California attorney, and that revocation of an out-of-state attorney's *pro hac vice* status is, in effect, a disqualification of the out-of-state attorney," this Division has concluded "that a California trial court's inherent powers include the authority to revoke an attorney's *pro hac vice* status when that attorney has engaged in conduct that would be sufficient to disqualify a California attorney." (*Sheller*, at p. 1716.)

" 'The authority to disqualify an attorney stems from the trial court's inherent power "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." [Citations.]' " (*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 8.) Our Supreme Court set forth the standard of review for a

16

disqualification motion as follows: "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144.) The failure of the trial court to follow the law constitutes an abuse of discretion as a legal matter. (*Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1294.)

### 2.2. Rule 4.2

" 'Contact with represented parties is proscribed to preserve the attorney-client relationship from an opposing attorney's intrusion and interference.' [Citation.]" (*Snider, supra*, 113 Cal.App.4th at p. 1197.) Rule 4.2 provides in relevant part: "(a) In representing a client, a lawyer shall not communicate directly or indirectly about the subject of the representation with a person* the lawyer knows* to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer. [¶] (b) In the case of a represented corporation, partnership, association, or other private or governmental

17

organization, this rule prohibits communications with: [¶] . . . [¶] (2) A current employee, member, agent, or other constituent of the organization, if the subject of the communication is any act or omission of such person* in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability." The asterisks (*) identify words defined in Rule 1.0.1(g-1). Rule 1.0.1(g-1) states: " '[p]erson' has the meaning stated in Evidence Code section 175." In turn, Evidence Code section 175 provides that " '[p]erson' includes a natural person, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity." Rule 1.0.1(f) further provides: " 'Knowingly,' 'known,' or 'knows' means actual knowledge of the fact in question. A person's* knowledge may be inferred from circumstances."

It is undisputed that Rothstein had ex parte contacts with A-Plus employees on at least two occasions, in October and December 2020. However, these facts, in and of themselves, do not constitute a violation of Rule 4.2.

On the record before us, whether the court abused its discretion in concluding that Rothstein violated Rule 4.2 raises a number of difficult questions. Rothstein argues that the court erred in finding a violation of Rule 4.2 because it did not make a definitive finding that A-Plus was defendants' agent. Defendants concede on appeal that the court did not resolve this issue, but argue that this is irrelevant because "Rule 4.2 does not require a conclusive finding that a third party's acts are 'binding upon or imputed to' the represented party—only that they 'may be.' " (Italics omitted.) While it is not necessary to demonstrate that the agent's act or omission that was the subject of the communication is in fact binding on the organization, a plain

18

reading of Rule 4.2(b) does not permit the conclusion that "may be" extends to whether the person with whom the attorney had contact is a current employee, member, agent, or other constituent of the organization. Courts are bound to construe the rule narrowly. (See *Snider*, *supra*, 113 Cal.App.4th at p. 1198 [" 'a rule whose violation could result in disqualification and possible disciplinary action should be narrowly construed when it impinges upon a lawyer's duty of zealous representation' "].)

The court correctly observed that Rothstein had taken the litigation position—including at the point of the contact with A-Plus employees—that ASCs were agents of Samsung. Rothstein's communications with an entity he argued was the agent of defendants, which he knew to be represented, raises the appearance of impropriety and the court was understandably dubious of his conduct, as are we. Rothstein should have sought guidance concerning the propriety of his intended actions and, if necessary, sought defendants' consent to contact A-Plus. (See *San Francisco Unified School Dist. ex rel. Contreras v. First Student, Inc.* (2013) 213 Cal.App.4th 1212, 1232, fn. 13 ["California courts have held that attorneys should resolve doubts about whether communications violate the rule by avoiding suspect communications and seeking court guidance. [Citations.] The need to seek such guidance particularly arises where . . . 'bright line' rules . . . [citation], are lacking."]; see also *Snider*, *supra*, 113 Cal.App.4th at p. 1215 ["where an attorney has reason to believe that an employee of a represented organization might be covered by rule 2-100 [predecessor to Rule 4.2], that attorney would be well advised to either conduct discovery or communicate with opposing counsel concerning the employee's status before contacting the employee"].)

19

Nevertheless, it was not undisputed that A-Plus was defendants' agent. In their motion to revoke Rothstein's *pro hac vice* admission, defendants stated that "Samsung denies A-Plus's agency." Thus, defendants have simultaneously argued that Rothstein has violated Rule 4.2 and that A-Plus was *not* defendants' agent, in which case Rothstein's conduct—although ostensibly improper—could not be a true violation of Rule 4.2.[8] It is also unclear how it could be established that Rothstein had actual knowledge that A-Plus was represented based on an agency relationship with a represented organization, where it remained undecided whether the agency relationship existed and defendants denied the relationship.

Absent factual determinations that A-Plus was defendants' agent or that Rothstein had actual knowledge that A-Plus was represented, the court's conclusion that Rothstein violated Rule 4.2 seems to be based solely on the appearance of misconduct. And while the named plaintiffs in this case apparently wish to be dismissed, we are troubled by the possibility that, under a similar scenario, the court or a finder of fact could subsequently determine that the person contacted was not an agent of the

[8] The court appeared to find that inconsistency in defendants' position was based on "a legitimate concern that its reading of the statute may be incorrect" with respect to whether defendants could be liable for the acts of its ASCs. However, whether the acts or omissions of ASCs could be binding on defendants goes to the second prong of Rule 4.2(b)(2), not whether an agency relationship existed. " 'The existence of an agency relationship is usually a question of fact, unless the evidence is susceptible of but a single inference.' [Citation.] Because the existence of agency is generally a question of fact, it logically follows that agency must be established with evidence." (*Zimmerman v. Superior Court* (2013) 220 Cal.App.4th 389, 401.)

organization, in which case the disqualified attorney's clients will have been denied the "important right to counsel of one's choosing" for a violation that, in retrospect, did not take place. (*Complex Asbestos*, *supra*, 232 Cal.App.3d at p. 586.) Further, if courts dispense with the requirement that the moving party make a factual showing of a violation, we are concerned that the use of disqualification motions for tactical advantage will only increase. (See *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 301 (*Gregori*) ["it is widely understood by judges that 'attorneys now commonly use disqualification motions for purely strategic purposes' "].)

Although we wish to acknowledge these concerns, we need not resolve them for purposes of this appeal. We assume, without deciding, that the court did not abuse its discretion in finding a violation of Rule 4.2 and proceed to consider whether the court's disqualification of Rothstein was an abuse of discretion. We conclude that it was.

### 2.3. The court abused its discretion in granting the motion to revoke Rothstein's *pro hac vice* admission.

"We do not disqualify a lawyer from representing a client to punish the lawyer's mistakes or even bad behavior. [Citations.] The discipline of lawyers in California is a function reserved to the State Bar. [Citations.] Rather, disqualification of counsel is a prophylactic remedy designed to mitigate the unfair advantage a party might otherwise obtain if the lawyer were allowed to continue representing the client. [Citation.]" (*City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 470–471.)

" 'Disqualification motions implicate several important interests, among them are the clients' right to counsel of their

21

choice, the attorney's interest in representing a client, the financial burden of replacing a disqualified attorney, and tactical abuse that may underlie the motion. [Citation.] The "paramount" concern in determining whether counsel should be disqualified is "the preservation of public trust in the scrupulous administration of justice and the integrity of the bar." [Citations.] It must be remembered, however, that disqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety.' [Citation.]" (*Sheller*, *supra*, 158 Cal.App.4th at p. 1711.)

Where there has been a violation of Rule 4.2, a trial judge may disqualify the attorney from acting as counsel in an action related to the subject of controversy, where the misconduct will have a substantial continuing effect on the proceedings before the court. (*Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607.) The court in *Chronometrics* observed: "We detect a common theme in the cases relating to disqualification of attorneys by trial courts. If the status or misconduct which is urged as a ground for disqualification will have a continuing effect on the judicial proceedings which are before the court, it is justified in refusing to permit the lawyer to participate in such proceeding. . . . If, on the other hand, the court's purpose is to punish *a transgression which has no substantial continuing effect on the judicial proceedings to occur in the future*, neither the court's inherent power to control its proceedings nor Code of Civil Procedure section 128 can be stretched to support the disqualification." (*Ibid.*, italics added.)

Similarly, the court in *Gregori* stated: "Since the purpose of a disqualification order must be prophylactic, not punitive, the significant question is whether there exists a genuine likelihood

22

that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court. Thus, disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation." (*Gregori*, *supra*, 207 Cal.App.3d at pp. 308–309; accord, *Big Lots Stores, Inc. v. Superior Court* (2020) 57 Cal.App.5th 773, 782 ["disqualification is a 'drastic remedy' that should only be ordered where attorney misconduct has a ' "substantial continuing effect on future judicial proceedings" ' "].)

Even assuming that Rothstein violated Rule 4.2, we conclude that the court abused its discretion in holding that the *Complex Asbestos* rebuttable presumption of disqualification applied in this case and erred in disqualifying Rothstein in the absence of substantial evidence supporting that his misconduct would have a substantial continuing effect on the proceedings.

### 2.3.1. The court's application of the *Complex Asbestos* rebuttable presumption was an abuse of discretion.

In *Complex Asbestos*, a paralegal worked for Brobeck, Phleger & Harrison (Brobeck), a law firm that represented defendants in asbestos litigation cases. (*Complex Asbestos*, *supra*, 232 Cal.App.3d at p. 580.) The plaintiffs in some of those cases were represented by the Harrison firm. (*Id.* at pp. 582–583.) While working for Brobeck, the paralegal acquired "confidential attorney-client information, materially related to the cases" involving the Harrison firm's clients, then left Brobeck to work, eventually, for the Harrison firm. (*Id.* at pp. 597–598.)

Specifically, the paralegal looked at "Settlement Evaluation and Authority Request" forms concerning the Harrison firm's cases, which were "brief summaries of the information and issues used by the defense attorneys and their clients to evaluate each plaintiff's case." (*Id.* at pp. 580, 597.) Certain defendants in the asbestos litigation filed a motion to disqualify the Harrison firm, which the court granted. (*Id.* at pp. 583–585.)

In affirming the order, the Court of Appeal established a methodology "for disqualification based on nonlawyer employee conflicts of interest." (*Complex Asbestos*, *supra*, 232 Cal.App.3d at p. 596.) "The party seeking disqualification must show that its present or past attorney's former employee possesses confidential attorney-client information materially related to the proceedings before the court. The party should not be required to disclose the actual information contended to be confidential. However, the court should be provided with the nature of the information and its material relationship to the proceeding. [Citation.] [¶] Once this showing has been made, a rebuttable presumption arises that the information has been used or disclosed in the current employment. The presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff. [Citation.] To rebut the presumption, the challenged attorney has the burden of showing . . . that the employee has not had and will not have any involvement with the litigation, or any communication with attorneys or co[-]employees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed. If the challenged attorney fails to make this showing, then the court may disqualify the attorney and law firm." (*Ibid.*, fn. omitted.)

24

Unlike *Complex Asbestos*, this is not a case in which a non-attorney employee of a law firm, who had access to (and admitted to accessing) confidential information concerning that firm's analyses of an opposing firm's clients and cases, later gained employment with the opposing law firm. Assuming that the presumption can apply outside the circumstances of a non-attorney employee with access to confidential information moving from one firm to another (a scenario that bears no resemblance to the circumstances of this case), there is no evidence indicating that A-Plus ever had access to any confidential attorney-client information from defendants or that any of the communications between Rothstein and A-Plus concerned information subject to the attorney-client privilege. Thus, there does not appear to be any legal basis to apply the presumption from *Complex Asbestos* in this case.[9]

*Snider*, *supra*, 113 Cal.App.4th 1187 is also instructive. In *Snider*, the trial court disqualified the attorney of the defendant in the action, Dale Larabee, following Larabee's contacts with two employees of Quantum Productions, Inc. (Quantum), the

---

[9] For the same reasons, *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, which the court also cited, does not support the application of the presumption to this case. *Shadow Traffic* involved a motion to disqualify defendant's counsel based on its contacts with an expert who previously met with plaintiff's counsel to discuss retention, obtained information about plaintiff's potential damages theories, and offered feedback on plaintiff's strategies. (*Id.* at pp. 1071–1073.) The Court of Appeal concluded that there was "substantial evidence to support the trial court's finding that in that one meeting, [plaintiff's counsel] disclosed confidential information to [the expert]" and thus the rebuttable presumption applied. (*Id.* at p. 1085.)

defendant's former employer. (*Id.* at p. 1192.) The Court of Appeal granted the defendant's petition for writ of mandate and vacated the court's order. (*Id.* at pp. 1197, 1216.) It concluded that there was no evidence presented that the employees Larabee contacted "had authority from Quantum to speak concerning this dispute or any other matter, or that their actions could bind or be imputed to Quantum concerning the subject matter of this litigation." (*Id.* at p. 1211.) The court further found that "there was no evidence presented that Larabee actually violated the attorney-client privilege" where "[t]here was no evidence presented that Quantum's counsel had any communications with [the employees] prior to Larabee's contacts and attempted contacts with them." (*Ibid.*) Although one of the employees stated in a declaration that the attorney "asked her 'many more questions I cannot remember right now,' " the court rejected the argument that this was sufficient to establish that "there might have been confidential information disclosed." (*Id.* at p. 1212.) "[T]his is mere speculation that cannot support a finding of a violation of rule 2-100, or disqualification of counsel." (*Ibid.*)

Accordingly, it is not appropriate to assume that confidential information was disclosed simply because the A-Plus employees contacted cannot remember the full details of their communications with Rothstein. (Accord, *Complex Asbestos*, *supra*, 232 Cal.App.3d at p. 596, fn. 13 ["[S]howing merely potential access to confidences without actual exposure is insufficient. The threat to confidentiality must be real, not hypothetical."].) Here, as in *Snider*, there was no evidence presented that counsel for defendants ever spoke with A-Plus or its employees prior to Rothstein's contacts with them.

26

Considering that defendants deny the existence of an agency relationship, such contact seems unlikely.

The trial court's "discretion is ' "subject to the limitations of the legal principles governing the subject of its action, and subject to reversal on appeal where no reasonable basis for the action is shown. [Citation.]" [Citation.]' " (*Snider, supra,* 113 Cal.App.4th at p. 1197.) Further, " '[i]t is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 566.) The court stated that *Complex Asbestos* stands for the proposition that "[c]ourts employ a rebuttable presumption of disqualification when the challenged party alone holds the information wrongfully obtained"[10] and that " '[t]he presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff.' " As established above, the holding of *Complex Asbestos* does not sweep so broadly. We see no basis to significantly expand the application of the rebuttable presumption when "the thrust of [*Complex Asbestos*] is to implement the important public policy of protecting against the disclosure of confidential information and the potential exploitation of such information by an adversary." (*Shadow Traffic Network v. Superior Court, supra,* 24 Cal.App.4th at p. 1085.) While there was a hypothetical risk of disclosure of confidential information in this case, there was no showing that A-Plus was ever *actually* exposed to attorney-client confidential

---

[10] We note that, although they did not remember many details of their conversations with Rothstein, the A-Plus employees *did* recall and were able to provide information about the subject matter of the discussions.

27

information, nor did the court ever make such a finding. Thus, the court's reliance on the rebuttable presumption was not supported by the relevant law and was an abuse of discretion.

Our conclusion is bolstered by the fact that courts have declined to apply the rebuttable presumption where the party moving for disqualification continued to have access to the person or entity that potentially disclosed confidential information. In *Collins v. State of California* (2004) 121 Cal.App.4th 1112, 1117–1118, counsel for defendant discussed the details of the case with an expert, who agreed to act as a consultant. The following year, the expert agreed to be an expert witness for the plaintiffs in the same case, having apparently forgotten about his consultancy with defendant. (*Id.* at pp. 1118–1119.) Although plaintiffs' counsel stated that the expert had never disclosed his consultancy, the trial court granted a motion disqualifying the expert and plaintiff's attorney. (*Id.* at pp. 1120–1121.) The Court of Appeal concluded that, even though substantial evidence supported the trial court's conclusion that confidential attorney-work-product information was exchanged with the expert (*id.* at p. 1128), the rebuttable presumption did not apply because "[a]t all times, the expert witness . . . remained a consultant for [defendant's] counsel" and thus "[t]he most important source of the information from which to ascertain whether [the expert] had passed on any confidential information . . . thus remained in [defendant's] hands." (*Id.* at p. 1129.) It observed that "[w]hen the expert has gone to the other side and is no longer available to the side that originally retained him, the shifting of the burden of proof makes eminent sense," but where the expert was still available to the party that originally retained him, "the normal burdens of proof, wherein the party moving for relief must

28

establish its right to it, is appropriate." (*Ibid.*; accord, *Shandralina G. v. Homonchuk* (2007) 147 Cal.App.4th 395, 413 [rejecting application of rebuttable presumption where there was no evidence that defendant's confidential medical consultant, who later spoke with plaintiff's attorney, "was legally unavailable to [defendant] as a source for evidence of what confidential information" had been disclosed].)

Thus, even if we assumed A-Plus had access to confidential attorney-client information, there is no evidence in the record to support that A-Plus or its employees had "gone to the other side" or were legally unavailable to defendants. Rather, the declarations from A-Plus employees state that A-Plus remains an authorized service center and thus is affiliated with Samsung in some manner. Its employees also provided defendants' attorneys with declarations concerning the subject of their discussions with Rothstein. This further supports that the rebuttable presumption did not apply in this case as a matter of law. (See *Shandralina G. v. Homonchuk, supra,* 147 Cal.App.4th at p. 414 ["Because the impossibilities underlying . . . [the] rebuttable presumptions (applicable when former employees have joined the legal staff of the challenged attorney) are absent [citation], the reasons for the presumption are not present."].)

### 2.3.2. Substantial evidence does not support that there is reasonable likelihood of a substantial continuing effect on the proceedings.

In the absence of an applicable presumption, the court was required to conclude, based on the evidence, that there was a "reasonable probability" that Rothstein "wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings

29

before the court" before revoking his *pro hac vice* admission. (*Gregori, supra*, 207 Cal.App.3d at pp. 300, 308–309.) The burden of making this showing was on defendants as the parties seeking disqualification. (*Collins v. State of California*, *supra*, 121 Cal.App.4th at p. 1129.) " 'Even under [the abuse of discretion] standard, there is still a substantial evidence component. We defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its discretion.' [Citation.]" (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1121 (*McDermott*).)

We do not agree with defendants that the court's observations that Rothstein sought information to support his allegations and that such information could hypothetically be used against defendants in this litigation or future litigation involving other plaintiffs constituted a finding that there was substantial evidence that Rothstein improperly obtained information that was reasonably likely to have a continuing impact on the proceedings. Because the order establishes that the court erroneously relied on the rebuttable presumption in revoking Rothstein's *pro hac vice* status, we will not imply that it made the required finding of a substantial continuing effect in the alternative. "A discretionary order based on the application of improper criteria or incorrect legal assumptions is *not* an exercise of *informed* discretion and is subject to reversal even though there may be substantial evidence to support that order. [Citations.]" (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 26; accord, *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384 ["When the record clearly demonstrates

30

what the trial court did, we will not presume it did something different."].)

Regardless, on the record before us, we do not find substantial evidence to support the conclusion that Rothstein obtained an unfair litigation advantage that was reasonably likely to have a substantial ongoing effect on the litigation, such that the drastic remedy of disqualification was appropriate. Rothstein represented that his communications were "confirmatory" in nature and "did not provide any information other than general information about the availability of parts as reported on Samsung's database." The declarations of A-Plus's employees support that he asked about the availability of parts on the Samsung database. Defendants do not contend that this was confidential or privileged information of the kind the rule is intended to protect. (See *La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 777 [court correctly denied disqualification motion where there was "no evidence that [offending lawyers] obtained any confidential information that could give their clients an unfair advantage or impact upon the fairness of the trial or integrity of the judicial system"]; see also *Snider*, *supra*, 113 Cal.App.4th at p. 1197.) Although defendants and the court placed great weight on the fact that the A-Plus employees could not recall the full details of what they disclosed to Rothstein, we are not permitted to assume that the disclosures were significant or confidential in nature or would have a substantial continuing effect on the litigation absent evidence to that effect. As discussed above, "mere speculation . . . cannot support . . . disqualification of counsel." (*Snider*, at p. 1212; see also *Castro v. Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432, 1442

["Speculative contentions of conflict of interest cannot justify disqualification of counsel."].)

Defendants argued that "any information Mr. Rothstein gained from these queries cannot be unlearned and pose an ongoing threat to Samsung's position in this litigation," but failed to articulate with any specificity or reference to evidence what substantial continuing effect Rothstein's understanding of the availability or unavailability of replacement parts may have on future proceedings, or how this would provide Rothstein with an unfair advantage. To the extent any information Rothstein obtained from A-Plus about the availability of parts was inaccurate, there is no basis to believe A-Plus's statements would be binding on defendants in future proceedings. The court previously remarked that section 1793.03, subdivision (b), "does not make manufacturers liable for inaccuracies if an ASC advises a customer that a needed part is not available when such parts are available."

*McDermott*, *supra*, 10 Cal.App.5th 1083, on which the court relied, does not compel a different conclusion. In *McDermott*, the trial court disqualified defendants' counsel, Gibson, Dunn & Crutcher LLP (Gibson Dunn), because it failed to recognize the potentially privileged nature of an e-mail and used the e-mail over an objection that it was inadvertently disclosed. The Court of Appeal first concluded that substantial evidence supported the trial court's ruling that there was no waiver of privilege. (*Id.* at pp. 1102–1106.) With respect to disqualification, the court observed: " ' " '[I]n an appropriate case, disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in [accordance

32

with his or her *State Fund*[11] duties], assuming other factors compel disqualification.' " ' [Citations.]" (*Id.* at p. 1120.) It concluded that the trial court did not abuse its discretion in disqualifying Gibson Dunn where it produced the inadvertently disclosed email in response to a subpoena, refused to return the email and denied that it was privileged, "further reviewed and analyzed the e-mail to determine its relevance to the claims and defenses in" other actions, "formulated deposition questions based on the e-mail's content," "deposed [two individuals] about the e-mail while reading portions of it into the record," "identified and quoted the e-mail in its interrogatory responses that described evidence supporting Defendants' defenses, produced the e-mail in discovery, and lodged a copy with the trial court in opposition to the privilege motion." (*Id.* at p. 1122.) The court in *McDermott* concluded "this evidence shows Gibson Dunn thought it could use the e-mail to Defendants' advantage in opposing [the plaintiff's] claims" and "constitutes substantial evidence supporting the trial court's finding disqualification was necessary to prevent future prejudice or harm." (*Ibid.*) The court further observed that "[*Clark v. Superior Court* (2011) 196 Cal.App.4th 37] established that an attorney who knowingly uses inadvertently disclosed, privileged materials to depose witnesses may affect the outcome of the lawsuit and therefore justifies a trial court's exercise of its discretion to disqualify the attorney." (*Ibid.*) Thus, the *McDermott* court's conclusion that

---

[11] *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644. "*State Fund* is the seminal California decision defining a lawyer's ethical obligations upon receiving another party's attorney-client privileged materials." (*McDermott*, *supra*, 10 Cal.App.5th at p. 1106.)

disqualification was appropriate relied in large part on the fact that the email obtained by Gibson Dunn contained inadvertently disclosed, privileged information. No such showing was made in this case.

Although the court acknowledged that the purpose of disqualification motions is not to punish counsel, it also held that disqualification was appropriate, in part, because "it is apparent that Rothstein sought information to be used in this case to support the allegations of the SAC." However, "it is one thing to say [Rothstein's] conduct was unprofessional and showed bad judgment and quite another to say . . . that it warrants his disqualification." (*Gregori*, *supra*, 207 Cal.App.3d at p. 309; accord, *Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 471 [appearance of impropriety is not a sufficient ground to disqualify an attorney in California].) We conclude that the standard for disqualification has not been met.

## DISPOSITION

The order granting defendants' motion to revoke Rothstein's *pro hac vice* admission is reversed. Rothstein shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, Acting. P. J.

WE CONCUR:

EGERTON, J.

ADAMS, J.